Argued April 4, affirmed September 20, petition for rehearing
denied October 17, 1967, United States Supreme Court
denied certiorari March 4, 1968

## STATE OF OREGON, *Respondent, v.*
## DWAIN LEE LITTLE, *Appellant.*

431 P. 2d 810

See also 241 Or 557, 407 P.2d 627.

*Otto R. Skopil* and *Bruce W. Williams,* Salem, argued the cause for appellant. On the briefs were Williams, Skopil & Miller and Harry C. Coolidge, Salem.

*William F. Frye,* District Attorney at Trial, Eugene, argued the cause for respondent. With him on the brief were Donald L. Paillette, District Attorney, and Francis W. Linklater, Deputy District Attorney, Eugene.

Before PERRY, Chief Justice, and McALLISTER,

300

SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

DENECKE, J.

The defendant, who was 15 at the time of the charged offense, was found guilty of first-degree murder.

I

Defendant contends that certain evidence was obtained by an illegal search and seizure. The evidence was blood, head and pubic hair, and saliva of the defendant. The defendant raised the issue by a timely motion to suppress.

The state seems to argue that the question is solely a fifth-amendment problem, the right against self-incrimination, and not a fourth-amendment issue, the right to be free from unreasonable search and seizure. It relies upon *Schmerber v. California*, 384 US 757, 86 S Ct 1826, 16 L ed2d 908 (1966), for its position. We read *Schmerber v. California* as clearly requiring blood taking to be accomplished in conformity with fourth-amendment standards, as well as fifth-amendment standards. Those standards were met in that case because the seizure, the blood taking, was incident to a lawful arrest.

We conclude that the fourth-amendment standards were met in this case because the seizure was made with the consent of the defendant.

The evidence about the seizure was sharply divergent. The trial court made detailed findings of fact and found that the defendant consented. There is ample evidence to support its findings. The court also

stated the constitutional standards it deemed applicable in passing upon this issue. We are in agreement with those expressed standards, and the defendant does not contend they are incorrect.

The murder victim was a girl who lived in defendant's rural neighborhood. The defendant was not a prime suspect during the time here relevant. The defendant, along with others in the neighborhood, had been questioned by the state police and he had said that he saw a hunter in the vicinity about the time of the murder. The defendant's family had retained an attorney after the initial questioning. The police asked the attorney if they might go to the defendant's house and take some clothing and personal effects for examination. After the attorney agreed and so informed the Little family, the police picked up this property. Apparently, after this, the defendant was away on a hunting trip and the police asked his mother to call when he returned. They explained that they wanted to show the defendant some photographs to see if he could identify the hunter he said he saw.

Later, the defendant's mother called the officer and told him her son had returned. The officer went to the house with the photographs. While there, the defendant's mother, in the defendant's presence, told the officer she had heard that various body samples were being taken from other boys in the neighborhood and asked if they were going to take some from her son. The officer said they would if it was agreeable. The mother responded that although she would like him to give the samples, because he had a cold she did not want him to go into town. Accordingly, it was arranged for a doctor to come out and the officer and a doctor came out that same day. The accused pulled

his sleeve up and the physician took the blood. He also cut head and pubic hairs.

The officer later learned that the crime detection laboratory wanted saliva; therefore, the next day an officer went out with a vial. At the officer's request the defendant spat into the vial.

The trial court found that all this was conducted in a congenial atmosphere. There was no testimony, however, that the defendant expressly consented to any of the takings.

At some stage of the taking of the body substances defendant's attorney was called by defendant's mother in defendant's presence, and he approved the taking of the blood and hair, which he believed to be head hair. He was not asked about the pubic hair or saliva.

The state has the burden of establishing that the defendant consented to the seizure. *State v. Marshall,* 234 Or 183, 184, 380 P2d 799 (1963). Mere acquiescence to lawful authority is not consent. We do not need to decide whether a mother of a 15-year-old son can consent to a search and seizure of her son against his consent.[1] There was ample evidence to support the trial court's findings of fact that the son consented, in addition to his mother's consent. We also agree with the trial court's conclusion of law that the facts, as it found them, amounted to the requisite consent.

## II

After the trial court had made its ruling denying the motion to suppress, the defendant filed a motion for a change of judge. The motion stated, among other

---

[1] *Third Party Consent to Search and Seizure,* Wash U L Q, 12, 27-28 (1967); Reeves v. Warden, Maryland Penitentiary, 346 F 915 (4th Cir 1965).

things, that the judge was prejudiced and, therefore, disqualified under ORS 14.250.

The basis for the charge of prejudice was the trial court's written opinion on the motion to suppress. In effect the court stated that it did not believe the testimony of defendant's mother and father.

■■ The defendant was not entitled to have his motion granted as a matter of course under ORS 14.250–14.270 because the court had already ruled on a matter in issue in the case, the motion to suppress, and the motion to disqualify, therefore, was not timely. *Taylor v. Gladden,* 232 Or 599, 602-603, 377 P2d 14 (1962). We do not need here to decide whether the statutory time limitations are applicable to motions to disqualify based upon specific charges of prejudice rather than "statutory prejudice" (as it was labeled in *Taylor v. Gladden,* supra (232 Or at 603) or "imputation of prejudice" (as it was labeled in *State ex rel Lovell v. Weiss,* — Or —, 430 P2d 357 (1967), 442 P2d 241 (1968). The opinion of the trial judge, after hearing the testimony, that the testimony of witnesses favorable to the defendant was not worthy of belief is not evidence of prejudice.

"The unfavorable opinion of a party or witness which a hearing officer or a trial judge may entertain as a result of evidence received in a prior and connected hearing involving that individual is not 'bias' in the invidious sense. It is in effect a judicially-determined finding which may properly influence such officer or judge in a supplemental proceeding involving the penalty or punishment to be assessed, or the grace to be extended." *MacKay v. McAlexander,* 268 F2d 35, 39 (9th Cir 1959). Accord, *Huntingdon v. Crowley,* 64 Cal2d 647, 51 Cal Rptr 254, 414 P2d 382, 393 (1966).

## III

Defendant moved for an order requiring the state to produce for defendant's inspection and copying or photographing the following:

(1) Personal property taken from the defendant or defendant's parents;

(2) Bodily substances taken from the defendant;

(3) Personal property taken from third persons;

(4) Bodily substances taken from third persons;

(5) (a) Notes of conversations with defendant or written statements taken from defendant;

(b) The same as (a) in regard to third persons and made in the investigation;

(c)–(f) Reports regarding tests made of items in (1), (2), (3), (4).

The court allowed item (1), inspection and photographing of personal property of defendant, and a portion of item (5), the inspection and copying of any written or recorded statements taken from defendant. The court also granted defendant the right to inspect and copy any autopsy reports made upon the victim's body. The remainder of the motion was denied and defendant assigns such denial as error.

Oregon has statutes concerning discovery in both criminal and civil proceedings. ORS 41.615 provides:

"(1) Upon motion of any party showing good cause therefor, and upon notice to all other parties, and subject to the provisions of ORS 45.181, the court in which a proceeding is pending may:

"(a) Order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated

documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by ORS 45.151 and which are in his possession, custody or control; or

"* * * * * *"

ORS 136.510 provides:

"The law of evidence in civil actions is also the law of evidence in criminal actions and proceedings, except as otherwise specifically provided in the statutes relating to crimes and criminal procedure."

In *State v. Leland,* 190 Or 598, 615, 227 P2d 785, affm'd 343 US 790, 72 S Ct 1002, 96 L ed 1302, rehr den 344 US 848, 73 S Ct 4, 97 L ed 659 (1951), we held that the predecessor statute of ORS 41.615, quoted above, was a part of the law of evidence and, unless otherwise specially provided, is by reason of ORS 136.510, also above quoted, applicable to criminal actions.

In 1961 the legislature enacted ORS 133.755, entitled "relating to discovery and inspection in criminal actions":

"(1) Upon motion of a defendant, at any time after the filing of the indictment or information, and upon a showing that the items sought are material to the preparation of his defense and that the request is reasonable, the court may order the district attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant, including written statements or confessions made by the defendant. The order shall specify the time, place and manner of making the inspection and of taking copies or photographs and may prescribe such terms and conditions as are just.

"(2) Inspection of the items described in subsection (1) of this section may be made in criminal actions in accordance with the provisions of subsection (1) of this section and no other."

The defendant contends that ORS 41.615, as well as ORS 133.755, is applicable. The state contends that in ORS 133.755, the criminal discovery statute, it is "specially provided" that that statute alone shall govern criminal proceedings.

Subsection (2) of ORS 133.755 provides: "Inspection of the items described in subsection (1) of this section may be made in criminal actions in accordance with the provisions of subsection (1) of this section and no other."

This subsection is not clear. It might be contended that the phrase, "and no other," refers to the manner in which inspection may be obtained. However, such a meaning would be far more evident if the statute stated "and *in* no other" or, "and in no other manner."

■ We conclude that ORS 41.615 does not apply to criminal cases and this aspect of discovery in criminal cases is covered by ORS 133.755.[2]

This conclusion is in accordance with the legislative history of ORS 133.755. The minutes of the Senate Judiciary Committee considering HB 1156 which became ORS 133.755 contain the following statement:

"This bill was introduced because of action taken by the 1959 legislature whereby they repealed ORS 41.630 providing for a broad and comprehen-

---

[2] The right to the autopsy report is not a discovery right but is granted by ORS 146.560 and 432.130.

We need not decide in this case the question of whether the statutes are exclusive and no type of discovery is permitted unless expressly authorized by statute. ORS 133.755 refers to the type of discovery sought here and, therefore, is controlling in this case.

sive discovery and inspection procedure in civil proceedings. The Supreme Court in State v. Leland held it also applied to criminal proceedings. The 1959 legislature substituted numerous other sections which by their nature could not apply to criminal proceedings, so the interim committee felt that there was no longer any section in the Code that allowed the defendant discovery and inspection proceedings in criminal actions."

See, also, Report of the Legislative Interim Committee on Criminal Law, Jan 1961, p 21; Ellis, *Discovery in Oregon Criminal Cases,* 4 Willamette L J 167, 177–181 (1966).

It is also in accord with our decision in *State v. Foster,* 242 Or 101, 105, 407 P2d 901 (1965), relied upon by defendant as indicating this court's more liberal view toward discovery in criminal cases. In that case we held that at the close of the state's direct examination of a state's witness, the defendant was entitled to examine a pretrial statement given by that witness to the state. This enables the defense to use such statement for possible impeachment of the witness upon cross-examination. However, in that same case we held that the trial court was correct in denying the defendant's pretrial motion to examine the statements of several witnesses. We recognized that such a ruling was a restraint upon pretrial discovery, but, nevertheless, approved such restraint.

Having determined that the defendant's right to inspect is governed by ORS 133.755, his motion to inspect shall be measured by that statute.

That section authorized the inspection of "tangible objects, obtained from or belonging to the defendant." The bodily substances, blood, hair and saliva, are such "tangible objects." However, the statute also requires

a showing that "the items sought are material to the preparation of his [defendant's] defense." Counsel, in his affidavit in support of the motion to inspect, states that it is necessary that the items enumerated in the motion be produced so counsel may properly conduct the defense by having tests performed upon such items.

■ These same bodily substances, blood, hair and saliva, could have been obtained from the defendant by his counsel at the time the motion was made. Our lay belief is that such substances would have had the same characteristics at the time of the motion as at the time the substances were taken from defendant by the police during the investigation. We may be in error in this belief; however, the defendant has the burden of overcoming this belief by making a showing that there may be different characteristics in the substances taken just before trial from those taken by the police at the time of investigation. No such showing has been made. Nor did the defendant claim that the items had been altered after being taken from the defendant and before they were tested or that an examination of the items taken by the police was necessary to assess the validity of the tests made by the police. We hold that the bodily substances sought were not material to the defense.

■ The statute does not authorize the pretrial inspection of personal property, bodily substances, or prior written statements taken from third persons. The Oregon statute, ORS 133.755, was patterned after the Federal Rules of Criminal Procedure, Rule 16, 18 USCA, with the significant difference that the Federal Rules expressly authorize inspection of "tangible objects * * * obtained from others" as well as from the defendant, while the Oregon statute does not contain

those quoted words, but only states objects "obtained from or belonging to the defendant."

■ The defendant stresses that he was handicapped in his defense by his inability to obtain a pretrial inspection of the laboratory tests made by the police. Testimony of the results of those tests of defendant's blood, hair and saliva was damaging to defendant.

The federal courts operating under Rule 16 have consistently held that such reports are not subject to pretrial inspection.

> "So far as the laboratory report is concerned, it does not differ from the statement of any other nonparty witness. It is not covered by Rule 16, F. R. Crim. P., 18 USC because not 'obtained from or belonging to the defendant or obtained from others by seizure or by process'. * * * " *United States v. Tirado*, 25 FRD 270, 271 (SD NY 1958). Accord, *United States v. Telles*, 226 F Supp 670 (ND Cal 1964).

Rule 16 was enlarged in 1966 and now provides as follows:

> " * * * (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the government * * *." Federal Rules of Criminal Procedure, Rule 16, 18 USCA (as amended Oct 16, 1966).

Oregon has not so amended its discovery statute.

The trial court ordered the state to produce for defense counsel's inspection all clothing taken from defendant or given by him or his parents to the police; nevertheless, a pair of blue jeans which the police had taken were not turned over to counsel. The record convinces us that this omission was through inadvertence.

■ Regardless of the motive of the police, the omission did not prejudice defendant. When the omission was called to the trial court's attention during the trial, the court offered to continue the trial while defendant had the jeans examined by an expert. The defense did not accept the offer. Thereupon the report of the laboratory about these jeans was given to the defense. This report was from the same laboratory that would have made the examination for the defense if it had been given the jeans for pretrial inspection. The report given the defense is more comprehensive than it would have received if it had been given the jeans and sent them for tests because the blood spots had been removed from those jeans by the time they should have been made available for pretrial inspection, whereas the document given the defendant contained a report concerning those blood spots.

We conclude the defense was not prejudiced by the omission.

The trial court's action upon defendant's motion for pretrial inspection was correct.

## IV

The defendant moved for a judgment of acquittal after the state had rested and assigns the trial court's denial of his motion as error.

The indictment charged a felony murder; it alleged that the defendant, while committing rape or attempting to commit rape on the victim, killed her by stabbing her with a knife.

■ The case was substantially all proved by circumstantial evidence; however, that is not ground for reversal.

■ The defense argues that although this was a felony murder charge, which requires proof of one of

several specified collateral felonies, including rape or attempted rape, the state presented only proof of an assault which brought about the death and, therefore, was not collateral and presented no proof of rape or attempted rape. ORS 163.010. The collateral felony required to prove felony murder takes the place of the premeditation otherwise required in first-degree murder.

■ There was proof of intercourse with the victim; however, the expert opinion was that this act took place after the victim was dead. This raises a question whether the act constituted rape. However, the sequence of assault followed by the act of intercourse is evidence of an intent to commit rape and an attempt to commit rape. Therefore, there was evidence of the commission of the collateral felony.

*Commonwealth v. Gricus,* 317 Mass 403, 58 NE2d 241 (1944), concerned a felony (rape) murder charge. The court stated: "Upon the evidence the jury properly could find that the defendant killed Mrs. Parent either in reducing her to helplessness prior to forcible sexual intercourse with her against her will, or in stilling her outcries during such intercourse. In either event, the murder would be murder in the first degree." 317 Mass at 412.

## V

The defendant moved for a change of venue, contending that there had been such wide publicity in Lane county, where the charge was brought, that he could not get a fair and impartial trial in such county.

ORS 131.420 provides for a change of venue "[w]hen it is made to appear to the satisfaction of the court that a fair and impartial trial cannot be had in the county where the action is commenced."

Supporting the motion were affidavits of prominent members of the Lane county bar to the effect that the defendant could not get a fair trial in Lane county, numerous newspaper clippings and a statement, signed by numerous persons, to the effect that the defendant could not get a fair trial in Lane county.

The defendant in his statement attached to the motion stated that the news media accounts were "factual"; however, the wide coverage "inevitably makes the crime an affront to the conscience of the community."

One of the two newspaper stories cited in the brief as exemplary of the news coverage which was the basis of the motion for new trial was as follows:

"The girl's throat had been slashed twice, she was struck several times on the head with a blunt instrument, and she had been sexually assaulted in the most brutal crime committed in this area since 1960."

None of the news coverage is alleged to have stated or intimated that the defendant committed the crime. The prejudice, if any, would have been created against whomever was tried for the crime. In the *Sheppard* case, *Sheppard v. Maxwell,* 384 US 333, 86 S Ct 1507, 16 L ed2d 600 (1966), the court found that the news coverage prejudiced defendant so as to deprive him of a fair trial by, among other things, making it appear as if the defendant had committed the crime.

The decision on a motion for change of venue is largely within the discretion of the trial court. Although its discretion is not unlimited, the nature of the news coverage in this case does not impel us to conclude that the defendant could not receive a fair and impartial trial in Lane county; therefore, we affirm the order of the trial court.

## VI

█ The last assignment of error is directed at the trial court's failure to instruct in a manner for which the defendant now contends.

The state offered three guns in evidence, Exhibits 5, 6 and 7; 5 and 6 were received and 7 was not. At the end of the presentation of the evidence it was the opinion of the trial court that 5 and 6 had no relevancy without 7. The state did not claim that 5 and 6 had anything to do with the commission of the crime; however, it contended that the condition of guns 5 and 6, as contrasted with 7, indicated that 7 might have a connection with the crime.

The trial court ordered 5 and 6 withdrawn and stricken from the evidence. The court instructed the jury, generally: "Testimony or exhibits which may have been received but ordered stricken by the court, you are to disregard entirely."

The defense contends that the court should have instructed the jury to specifically disregard Exhibits 5 and 6, the two guns. No such instruction was requested. No exception was taken to the general instruction given. Even if defendant had preserved his claim of error, we consider the trial court's action in not singling out these two particular exhibits for comment as well within its discretionary power of casting the form of instructions.

Affirmed.