Argued November 2, 1967, affirmed May 15, 1968

STATE OF OREGON, *Respondent, v.*
PETER BRENT ZAUNER,
*Appellant.*
Marion County Court No. 61233
441 P. 2d 85

*M. Chapin Milbank,* Salem, argued the cause for appellant. With him on the brief were Lawrence A. Aschenbrenner, Public Defender, and Gary D. Babcock, Deputy Public Defender, Salem.

*Gary D. Gortmaker,* District Attorney, Salem, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McAllISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

The defendant was charged with committing first-degree murder by killing a woman while attempting to commit rape. The jury found the accused guilty of first-degree murder and he appeals.

The principal contention of the defendant is that the trial court erred in denying his motion for a verdict of acquittal for the reason that there was no evidence that the defendant attempted to rape the victim.

The defendant was 16 at the time of the alleged crime. The victim was an unmarried 25-year-old woman. The defendant and the victim had been neighbors and Zauner on occasion came to visit the decedent. The date of the last visit before the murder is unknown, but it would have been at least a week before the murder.

At about 7:30 a.m. on June 14, 1966, the victim's mother came home from work and found her daughter dead in her bed in her home in a residential section of Salem. She was unclad, lying on her back, and covered up to her waist with a sheet. There was no evidence of any sexual intercourse. She had lacerations on her head and numerous stab wounds in her throat, all of which were causes of her death. Death occurred some time between 10:00 p.m. on June 13 and 2:00 a.m. on June 14.

A close neighbor had heard voices and saw lights in decedent's house between 12:00 and 1:00 a.m. There was no evidence of any forced entry into the victim's home. One window in the home may have been open. The mother had locked the door when she went to work and when she came home the key and lock acted peculiarly.

The victim's jeans and shirt were found in the living room. They were not torn or damaged. The shirt

had blood on it which had flowed from the top into the neck and back. There was a broken green bottle in the living room with the defendant's fingerprints on the neck. Pieces of broken green glass were found all over the living room and some pieces were blood-stained and some had pieces of the victim's head hair. A shoe of defendant's had a sliver of the same glass in the heel. A rolling pin and paring knife with blood-stains on them were found in the kitchen. Two towels with bloodstains were found on a chair in the living room. A cushion of the davenport had bloodstains. The victim was blood type A and all the blood from any place in the home was type A or unknown.

A brassiere and a pair of underpants were found on the floor of the bedroom. They were untorn and undamaged but had bloodstains. The pants had a dust imprint corresponding to the sole of defendant's shoe. The ownership of the pants and brassiere was not established by any direct evidence. A pillow and pil-lowcase in the decedent's bedroom were also blood-stained.

Zauner was brought to the Juvenile Center on either June 15 or 16. Shortly after that the clothing he was wearing was taken for testing. Inside the fly of his pants dried seminal fluid was found and ad-hering thereto were both a pubic and head hair of the victim. On the defendant's shorts seminal fluid stain was found. In the material of the shorts pubic hair and head hair were found which were identical to that found on objects at the decedent's home. The testi-mony is difficult to follow at this point, but the trier of fact could find that this hair found on defendant's shorts was similar to that identified as being from the decedent. The defendant's head hair was found on the pillow and sheets from the victim's bed.

■ The crime of attempted rape is composed of two elements: a specific intent to commit forcible sexual intercourse and an overt act " *'tending and fairly designed to effectuate the commission of the crime.'* " *State v. Moore,* 194 Or 232, 241, 241 P2d 455 (1952).

■ Attempted rape can be proved by circumstantial evidence. See *State v. Watts,* 208 Or 407, 301 P2d 1035 (1956). The perplexing question is whether the circumstantial evidence present in the instant case gives rise to inferences which are compelling enough to satisfy the requirement that each element of the crime with which the defendant is charged be proved beyond a reasonable doubt.

■■ The classic statement of the rule concerning the sufficiency of circumstantial evidence is found in the first-degree murder case of *State v. Dennis,* 177 Or 73, 77, 159 P2d 838, 161 P2d 670 (1945):

> "* * * The fact that a crime has been committed (the corpus delicti), and that it was done by the defendant, may be lawfully established by circumstantial evidence alone. * * *. Each fact necessary to establish guilt must be proved to the satisfaction of the jury and beyond reasonable doubt. The evidence upon which the State relies for conviction must not merely coincide with, render probable, and be consistent with, the guilt of the accused, but it must be inconsistent with any reasonable theory of his innocence and incapable of explanation upon any other rational hypothesis than that of guilt. * * *."

*State v. Harris,* 241 Or 224, 231-232, 405 P2d 492 (1965), recently reiterated the same principles. See *State v. Guse,* 248 Or 143, 432 P2d 516 (1967), which points out that some of the language in *State v. Dennis,* supra (177 Or 73), about circumstantial evidence is not literally correct.

■ In the application of such rule the jury, of course, is the final arbiter of all conflicts in the evidence. The jury is also entitled to draw all reasonable inferences that are capable of being made from the circumstantial evidence. The trial court, and this court, have the difficult task of determining whether the inferences that can be drawn are sufficiently reasonable so as to amount to evidence proving each material element of the crime beyond a reasonable doubt.

In *State v. Moore,* supra (194 Or at 236), the charge was contributing to the delinquency of a minor by attempting to have sexual intercourse with the minor. The key evidence was the minor's testimony that defendant " 'started to put his hands on my private parts; * * * and he didn't have a chance, * * *.' " We held this was insufficient proof.

In *State v. Watts,* supra (208 Or 407), the charge was statutory rape of a 14-year-old daughter. The relevant evidence was that the father was alone in the family home with the daughter for 30 to 40 minutes and that a medical examination disclosed that the child's vaginal opening was enlarged. The medical examiner testified that in his opinion the enlarged opening was caused by intercourse, but there could be other causes. We held that the circumstantial evidence was not of sufficiently convincing nature to uphold the conviction.

On the other hand, in *State v. Little,* 249 Or 297, 431 P2d 810, 816 (1967), we held that there was sufficient circumstantial evidence to justify the jury's verdict that the defendant attempted rape upon the deceased victim. There was medical evidence of intercourse taking place after the victim was dead. We did not answer the question whether this amounted to rape. Rather, we held: "However, the sequence of

assault followed by the act of intercourse is evidence of an intent to commit rape and an attempt to commit rape."

In the present case there is sufficient evidence to enable the jury to convict the defendant of some degree of homicide. The defendant's fingerprints on the broken bottle, the evidence that the defendant's heel had a sliver of glass similar to that found at the victim's house, the imprint of defendant's shoe on underpants which the jury could have found were the victim's, and the presence of the victim's head and pubic hairs upon the defendant's clothing would permit the jury to find that the defendant was in the room with the victim at about the time of the killing.

■ We also conclude that there is sufficient circumstantial evidence to permit the jury to find that the homicide occurred while the defendant was attempting to commit rape upon the victim. In this case the jury could reasonably find that the defendant disrobed the victim, had such contact with the disrobed victim so that some of the victim's pubic hairs adhered to the defendant's shorts and pants, and that at some time during this period the defendant was sexually stimulated so as to cause an emission of seminal fluid. This conduct of the accused which may have occurred after the assault can be considered in determining the accused's intent at the time of the assault. *State v. Little,* supra (431 P2d 810).

The California court has consistently held upon less evidence than is present in this case that there was sufficient evidence to enable the jury to find that the defendant killed the victim while attempting to commit rape. For example, in *People v. Hillery,* 62 Cal2d 692, 44 Cal Rptr 30, 401 P2d 382 (1965), the victim was found dead, under water, in an irrigation

ditch near her home, with shears embedded in her chest. Her wrists were tied behind her back, her blouse pulled down over her arms, and her brassiere pulled upwards exposing her breasts. Her jeans and underpants were ripped open exposing her private parts. Her private parts showed no evidence of penetration or attempted penetration. The court held such evidence was sufficient to substantiate a finding that the defendant committed murder while attempting rape.

When the technician from the Crime Detection Laboratory, Sgt. Pinnick, was on the witness stand, he testified he had made a written report of his examination and findings. The defendant asked to examine the report, the state objected, and the court ruled that the defense was entitled to see that part of the report which pertained to the technician's testimony on direct examination, but not the remainder of the report. The defense contends that this refusal to permit the defense to see the entire report is error.

■ We do not pass upon this assignment of error as the record is not sufficient for us to determine whether the trial court's order, if it were erroneous, was prejudicial. The record contains the complete report of the technician, but it does not contain a separate document which was that part of the report which the defense was permitted to inspect and it does not contain any specification of what parts of the complete record the defense was permitted to inspect or what portion he was not permitted to inspect.

In testifying concerning a brassiere, presumably that of the victim, Sgt. Pinnick stated that the position of the blood upon the straps indicated "it had spotted on there at the time of removal." The defendant's objection to such testimony was overruled.

A pair of shoes which the jury could have concluded were worn by the defendant were introduced into evidence. A pair of women's underpants which were found on the floor near the bed on which the victim was found were also introduced into evidence. The underpants had a dirt outline or imprint upon them. Sgt. Pinnick testified that when he received the objects for examination he covered the pants with a clear, light plastic and placed the right shoe over the impression of the dirt outline. He testified that the outline on the pants was the same as the sole of the shoe. The defendant's objection to the witness's observation was overruled.

■ The defendant contends that the testimony concerning the shoeprint and the brassiere was opinion evidence and Sgt. Pinnick, who qualified as an expert, should not have been permitted to give opinions in these two instances because no expertise was necessary to determine such matters. Defendant reasons that these were observations and conclusions that the jury could make without expert assistance; however, the testimony of the expert would give these conclusions weight they would not otherwise have.

The rule on opinion evidence is:

" 'The opinion of witnesses possessing peculiar skill is admissible whenever the subject matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, without such assistance; * * *.' " *Everart v. Fisher,* 75 Or 316, 326, 145 P 33, 147 P 189 (1915), quoting from *Muldowney v. Illinois Central Ry. Co.,* 36 Iowa 462, 473 (1873).

The court did not err in allowing the expert to so testify.

Affirmed.