Argued May 18, reversed and remanded July 1, 1971

STATE OF OREGON, *Respondent, v.*
OLIVER LEE CRENSHAW, *Appellant.*

486 P2d 581

*Gary D. Babcock,* Public Defender, Salem, argued the cause for appellant. With him on the brief was Benhardt E. Schmidt, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

## THORNTON, J.

Defendant was convicted of second degree murder by allegedly "pushing or shoving" Irene Marty over a cliff into the Columbia river gorge. He appeals on several grounds, including that there was not sufficient evidence to make a jury question. We agree.

The evidence of the alleged crime was entirely circumstantial. About noon on the day of the episode defendant became acquainted with a man named Leonard Pruchniewski in a secondhand store in east Multnomah County operated by defendant's brother. Soon thereafter defendant and Pruchniewski went across the street to a tavern. They began drinking beer. In a few minutes they became acquainted with Irene Marty, who had entered the tavern and was arguing with the tavern keeper for refusing to serve her because she was allegedly intoxicated. Shortly thereafter, at Irene's request, the three went to another tavern in defendant's car where they consumed more beer.

After several hours' drinking they bought 12 bottles of beer and drove out along the old Columbia river highway in the direction of the Vista House. During the trip both men made certain advances toward Irene which apparently were in no way rebuffed. Arriving at a turnout near the gorge about one mile west of the Vista House, the three got out of the car, then stood around for a few minutes drinking. At

Pruchniewski's suggestion the trio then decided to go down a very steep trail leading from the turnout in the direction of the river, to continue their drinking and possibly engage in other activities. Defendant testified that Pruchniewski repeatedly expressed concern that defendant would drive off and leave him and therefore insisted that he go down the trail also. All three were intoxicated.

Defendant testified that he was unfamiliar with the terrain and unaware of the existence of the cliff until some time after the incident occurred. The evidence was that the edge of the cliff, though only 250-300 ground feet distant, was not visible from the turnout nor from the trail because of the dense foliage. Defendant stated that after they had gone a few steps and were standing in a small open area, Pruchniewski suddenly and without any provocation struck him in the mouth sending him tumbling head-over-heels some 75 to 100 feet down the steep incline. Defendant said that when he stopped tumbling he could no longer see either of his companions, although he did hear the sound of something moving through the brush. He slowly made his way back up the slope to the road, but by a different route in order to avoid a further encounter with his alleged assailant. There was evidence that both the defendant and Pruchniewski received some visible bruises and abrasions during the afternoon. When defendant reached the road Pruchniewski was waiting, but Irene was nowhere to be seen. When defendant inquired as to her whereabouts and suggested going back down to get her, Pruchniewski said he was "too drunk to go back down there."

After more discussion, in which defendant claimed he urged that they go back for Irene and his companion insisted he was too drunk to go back, they left

the area and returned to the brother's secondhand store. By now it was late afternoon or early evening. Although several persons were in the store, his brother was not there. Defendant and others testified that during the discussion that followed, Pruchniewski stated that "nothing had happened" to the woman; that "she got back and walked off." Defendant requested Pruchniewski to stay there and await his brother's return, who would then assist them in deciding what to do about the missing woman. Despite defendant's request, Pruchniewski suddenly bolted and went back to the same neighborhood tavern. When the brother did not return, defendant persuaded two of his friends who were in the store to go out and search for the woman. This they did, but the defendant could not identify the turnout. A day or so later another search was instigated by defendant and two other acquaintances without success. Pruchniewski did not testify at the trial.[1]

The evidence offered by the state consisted mainly of testimony of defendant's friends and relatives to whom he had voiced various statements of concern and anxiety over the disappearance of the woman. There also was testimony that defendant, in response to inquiries by a police officer, had falsely informed the officer that he had let the woman out of his car in Gresham on the day of the incident. Defendant admitted this false statement prior to trial. In addition he had told his former landlady that the woman had been found when, in fact, she had not. The landlady also testified that he had evidenced great

---

[1] A footnote in defendant's brief states that Pruchniewski was also indicted and tried on the same charge, but that the charge was subsequently dismissed after the court sustained Pruchniewski's motion for directed verdict of acquittal after the state had put on its evidence. (Multnomah County Case No. C-58086)

fear of the police over the incident and had told her not to tell anyone he was at home.

The decedent's body was found fully clothed several months later at the base of the 500-600 foot cliff where the incident occurred by a group of Boy Scouts. The coroner testified that the body was badly decomposed but the skeleton showed numerous fractures which apparently resulted from the fall and caused her death. There was no other evidence of foul play. Defendant, upon learning that a woman's body had been found in the area, voluntarily returned from California, turned himself in and made a purportedly complete statement in the district attorney's office.

At the trial, defendant sought to explain his fear of the police by testifying that several months before he had been picked up by the police as a possible suspect in a bank robbery and held in the county jail for some two months, then released when he was found to have no connection with the crime.

The state contends that the evidence of defendant's consciousness of guilt was sufficient to support a verdict that the corpus delicti of the homicide and defendant's participation in the homicide had been proved.

We review the evidence in the light most favorable to the state and must sustain the trial court's ruling if there is any substantial evidence to support the verdict. *State v. Freeman,* 4 Or App 627, 628, 481 P2d 638 (1971).

As both parties concede, most of the evidence involved in this case was circumstantial. However that fact does not prevent a conviction. Circumstantial evidence alone is sufficient to establish any necessary

element of a crime. *State v. Hanna,* 1 Or App 110, 459 P2d 564 (1969).

In *State v. Zauner,* 250 Or 105, 110, 441 P2d 85 (1968), our Supreme Court said:

"* * * The jury is also entitled to draw all reasonable inferences that are capable of being made from the circumstantial evidence. The trial court, and this court, have the difficult task of determining whether the inferences that can be drawn are sufficiently reasonable so as to amount to evidence proving each material element of the crime beyond a reasonable doubt."

It is the duty of this court when a question is properly raised to view the evidence and determine " '* * * whether the inferences that can be drawn are sufficiently reasonable * * *.' " *State v. Freeman,* supra, at 630.

We cannot agree with the state that evidence of defendant's expressions of anxiety and false statements to the officer and his former landlady were sufficient to support a verdict, since there was no proof of the corpus delicti of a homicide and there is no evidence whatsoever that decedent was pushed over the cliff into the Columbia gorge or that defendant participated in such an act.

From a review of the entire record, it is our conclusion that there was a total want of evidence to sustain the charge that defendant had pushed or shoved the decedent to her death, or from which the jury could have reasonably inferred that defendant was guilty of homicide.[2] The judgment of the trial

---

[2] The trial judge in denying defense counsel's motions referred to the state's proof as follows:

"I recognize that this is a critical point in the case, and it

court is reversed and this cause is remanded with directions to dismiss this action and discharge the defendant.

Reversed and remanded with directions.

---

is a pretty thin question as to whether or not there is evidence sufficient to make a jury question * * *.

"* * * * *

"I realize it is a close question, but I am going to submit it to the jury."