Argued November 29, 1971, reversed January 28, 1972

STATE OF OREGON, *Respondent, v.* BERNIE HASSAN (No. 35331), *Appellant.*

493 P2d 68

*Ken C. Hadley,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Defendant was convicted after jury trial of assault and battery while unarmed by means of force likely to produce great bodily injury. ORS 163.255. The charging part of the indictment reads as follows:

> "The said BERNIE HASSAN on or about the 9th day of May A.D. 1970, in the said County of Douglas and State of Oregon, then and there being, and not being armed with a dangerous weapon, did then and there, in said county, unlawfully, wilfully and feloniously commit an assault and battery upon a child, to-wit: Rita Lee Hassan, of the age of five (5) months, by means of force likely to produce great bodily injury to the said Rita Lee Hassan, by then and there striking the said child about the head, face and ribs with his, the defendant's hands, and by crushing said child within his arms, whereby the child's rib cage was broken, and thereby caused grievous injuries to the said Rita Lee Hassan * * *."

Defendant's second assignment of error is that the trial court erred in denying his motion for a judgment of acquittal after the state rested its case. Our disposition of this assignment makes it unecessary to discuss the other three assignments.

In passing upon the denial of a motion for a directed verdict of acquittal, we review the evidence in the light most favorable to the state. *State v. Cren-*

*shaw,* 6 Or App 55, 59, 486 P2d 581 (1971); *State v. Freeman,* 4 Or App 627, 628, 481 P2d 638 (1971).

Rita Lee Hassan is defendant's daughter. On June 15, 1970, the mother took the baby to a pediatrician because the baby was not gaining weight. Upon examination the doctor found that the baby had bruises on her head, an ear infection, a cold, an ulcerated sore on her lip, thickened skin on her buttocks, severe diaper rash, and was suffering from malnutrition. The child was hospitalized the same day. X-rays taken at the hospital revealed three fresh rib fractures, four healed rib fractures and a partially healed fracture of each leg. There were no visible signs of the fractures and they could not be diagnosed by physical examination alone.

There was medical testimony that the rib and leg fractures and the bruises had been caused by trauma and that the ribs of babies are naturally springy and do not break easily. The cause of the skin condition on the buttocks is unknown but could have been the result of trauma. The physician could not diagnose the cause of the sore.

In addition to the doctors and nurses who had cared for the baby, the state called as witnesses the defendant's wife, three of the wife's relatives, a girl who had acted as babysitter two days before the baby went to the doctor, the babysitter's mother, and two members of the sheriff's department.

The wife testified that to her knowledge defendant had not at any time struck the child and only that she had seen defendant spank the baby "[w]ith his fingers."

"* * * * *

"Q Have you ever seen your husband strike Rita?

"A No, sir.

"Q Has he ever spanked her in your presence?

"A With his fingers.

"\* \* \* \* \*"

None of the other witnesses had seen the defendant display any hostility towards the baby; the nearest was the babysitter. She testified that the father dropped the baby perhaps one and one-half feet onto a bed with an inner spring mattress. She did not claim he was hostile toward the baby and when asked if he was angry with the baby she said "\* \* \* [h]e didn't look mad." On the night she took care of the baby it had the sore on its lip, bruises on its head, diaper rash, and appeared to have lost weight.

On cross-examination the wife testified that the father had been alone with the baby only once. There was no testimony linking this date with any injury to the baby.

The record indicates two occasions when the injuries could have occurred. The first time involved an argument between husband and wife in which the brother-in-law intervened. Defendant had picked up the baby and was threatening to leave the home. According to part of the testimony there had been some sort of tug of war between husband and wife while defendant was holding the baby in his arms. Another time defendant fell down some steps when he was carrying the baby from the apartment to the car.

A great deal of the testimony at the trial concerned the three-year-old boy of defendant, a son by a prior marriage who was living with the defendant

and his wife during the period in question. In its opening statement the state mentioned a report of child abuse concerning the three-year-old boy. The defendant moved for a mistrial on the basis that evidence of other crimes under the indictment which charged assault and battery upon the five-months-old child "* * * is immaterial in this proceeding, anything that may have happened to [the three-year-old boy] * * *." The court in denying the motion said "* * * it appears obvious to me that they are relying on the theory that, having struck one child, he will have struck another, and that is part of the circumstances." When evidence of the injury to the boy was later introduced at the trial defendant did not object. The evidence was that the boy had a serious bruise on the side of his face. At first defendant said the boy got the bruise by falling down stairs. Later defendant said he slapped the boy on the side of the face to discipline him for dirtying his pants and accidentally knocked the boy against a wall.

Defendant admitted having a bad temper. When one of the officers had asked him if the baby's crying bothered him, defendant

"* * * stated that it did; that he felt like picking the baby up by the heels and throwing it against the wall."

■ The evidence in the case is circumstantial. Circumstantial evidence alone is sufficient to establish any necessary element of a crime. *State v. Crenshaw,* supra, 6 Or App at 60. The determination which this court must make is whether the inferences to be drawn are sufficient to satisfy the requirement that each element of the crime with which defendant is charged be proved beyond a reasonable doubt.

■ There was proof that the fractures occurred and

that they were caused by force. There was no evidence that the defendant ever intentionally inflicted injury to the head, face, or ribs of the baby. The wife appears to have been in charge of the baby from its birth. She participated in the argument of May 9. Several persons saw the baby and took care of it during the period it received the injuries. The facts that the accused had a bad temper and had over-disciplined his three-year-old boy and that his daughter had sustained injuries are not sufficient to sustain a conviction in the absence of circumstances pointing to the defendant as the one who intentionally caused the injuries to the girl. An essential element of the crime was that defendant committed an assault and battery upon the child by means of force likely to produce great bodily injury. The circumstances presented by the evidence provide no more than a possibility or, at most, a probability that defendant assaulted the child. We therefore conclude that there was not sufficient evidence to make a jury question. *State v. Zauner,* 250 Or 105, 110, 441 P2d 85 (1968), quoted in *State v. Crenshaw,* supra, 6 Or App at 60.

Reversed.