Argued March 28, reversed April 21, petition for
rehearing denied May 16, 1972

STATE OF OREGON, *Respondent, v.*
RANDALL JEFFERSON (#C-70-11-0599 Cr.),
*Appellant.*
496 P2d 35

*George A. Haslett, Jr.,* Portland, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

The defendant was convicted by jury of larceny and sentenced to five years' imprisonment. Defendant appeals, contending that the court erred in denying his motion for acquittal made after all the evidence had been introduced and prior to argument.

Analysis of this assignment requires a review of the evidence in the light most favorable to the state.

On the morning of September 9, 1970, at the commencement of business, the manager of Millers' International, Inc., a jewelry store in the Raleigh Hills area of Portland, placed five valuable diamond rings under glass in showcase number three of the nine or so showcases. At 6 p.m., closing time, the store manager

discovered that the rings were missing from the showcase. Neither he nor any of the other employes working that day had shown any of the items from that showcase to any customers on that day. Of the approximately 12 persons whom the store personnel testified came into the store on that day, nine were identified from store records as having transacted business with the store. The other three were not identified.

Four days previously, about noon on September 5, 1970, defendant had entered the jewelry store. Three salesclerks were working in the store on that day and defendant brought in a watch for examination, examined some rings and asked to have one set aside for him. He gave the salesclerk his true name but for his address gave a street address in Hillsboro which was not a house number. Defendant was residing at the time on Northeast Hancock Street in Portland. For his telephone number defendant gave what he called a business number, 272-3023, which varied only slightly from the number of a Portland nightclub which defendant frequented—227-3023.

In the store at the same time with defendant, according to two salesclerks, was one Jerry Mooney, who at one point reached into one of the display cases and removed a pin, causing one of the clerks to leave defendant and summon the other clerk to wait on Mooney. Mooney and defendant did not enter or leave together and there was no sign of recognition between them, although a police officer testified he had seen them in a Portland nightclub—at the end of the bar in the area where "[t]he people that know everybody will be * * *."

About noon on September 9, the day of the alleged offense, defendant again came into the store.

The only persons working in the store at that time were one salesclerk and the store manager, who was busy designing a ring for a customer about this time. The salesclerk first noticed defendant in the store after she had turned to reach into the window display to obtain a ring at the request of another person in the store. This other person, identified by a Portland police officer as Kenny White, had been seen together with defendant in one or more Portland nightclubs and also with Jerry Mooney in a group of three to five people at the nightclub whose telephone number resembled the number previously given by the defendant.

On this September 9th occasion, defendant, White and the salesclerk discussed the purchase of ladies' rings. Defendant and White started to leave together and after White had preceded the defendant through the exiting door, the salesclerk reminded defendant that she was still holding the ring he had asked to have set aside four days before. She asked defendant if he wished to make a deposit on the ring and defendant made a deposit of $25. Defendant did not return for either the ring or his $25 deposit.

Defendant did not testify on his own behalf. He produced Jerry Mooney, who testified that he was not in the jewelry store on September 5 contrary to the testimony of the two clerks who had identified him from his photograph. Defendant recalled one of the clerks who reiterated her former testimony that Mooney was in the store on September 5, and finally he recalled the store manager and confronted him with one Harry Kenneth Wall. Wall exhibited a ring to the store manager which the manager remembered having seen previously. He also remembered having seen Wall, but the time was not developed. Wall then left

the courtroom without testifying, but it was stipulated that he would have testified that he was the person in the store with defendant on September 9. Neither the store manager nor the store clerk who was working that day remembered seeing Wall on that date.

■ It is clear from the above that the evidence relied upon for conviction of the defendant of larceny was entirely circumstantial. Circumstantial evidence alone is sufficient to establish any necessary element of a crime. The law requires only that each element of the crime necessary to establish guilt be proved beyond a reasonable doubt to the satisfaction of the jury. *State v. Freeman,* 4 Or App 627, 481 P2d 638 (1971).

"* * * The Oregon Supreme Court, in State v. Zauner, 250 Or 105, 441 P2d 85 (1968), set out the function of the jury and the duty of an appellate court in considering issues such as this:

" '* * * The jury is also entitled to draw all reasonable inferences that are capable of being made from the circumstantial evidence. The trial court, and this court, have the difficult task of determining whether the inferences that can be drawn are sufficiently reasonable so as to amount to evidence proving each material element of the crime beyond a reasonable doubt.' 250 Or at 110." 4 Or App at 630.

*See also, State v. Mitchell,* 9 Or App 17, 495 P2d 1245 (1972).

The state contends that the evidence in this case, related above, warranted submitting it to the jury. The state contends that the jury was warranted in believing that defendant ventured into the jewelry store on September 5, either as a rehearsal or a reconnaissance or an abandoned attempt at a jewel theft,

and that he participated in the completed theft on September 9.

On the other hand, the defendant contends that there was no evidence that anyone claimed to have seen him take the rings or that they were later found in his possession or that he aided another person in taking the rings. Rather, that the evidence showed only that the defendant was one of approximately 12 people in the store on the day the rings turned up missing. There was no evidence to show that defendant was hanging about the showcase where the rings were exhibited or was even any closer than to the adjoining showcase next to where the rings were placed on the morning that they disappeared. Defendant states that the most incriminating portion of the state's evidence was that he had been in the store a few days before, at which time he had given his correct name but gave a home address that applied to some deserted buildings rather than a home and also that the telephone number he gave was no longer his telephone number at the time of trial and was similar to a phone number of a Portland nightclub in which he had been seen on several occasions. He states that the only other unusual conduct shown by the evidence was that he, on the date the rings disappeared, gave a $25 deposit on a ring being held for him and had never finished paying for the ring and had never asked for the return of the deposit. The date of the alleged theft was September 9, 1970, and the defendant was indicted for the offense on November 24, 1970, approximately two and one-half months later. He contends that failure to return for the ring or his deposit in this relatively short period of time does not give rise to any inference against him.

In our review we do not weigh the evidence

nor make judgments on credibility, nor are we concerned with conflicts in testimony. Our purpose is to determine whether the inferences which may be drawn from the evidence are sufficiently reasonable to support a jury verdict. The test set forth in *State v. Zauner,* supra, is this: Where the evidence is entirely circumstantial, would a reasonable person, based upon all the evidence adduced in the case, be warranted in finding beyond a reasonable doubt that the defendant committed the offense charged?

■ In this case, where only nine of at least a dozen persons who were in the store were identifiable by the state and where there was no closer connection of the defendant to the taking of the ring than his having been in the store under circumstances where it would have been possible for him to have been the thief, we think the state failed to sustain its burden. Upon the evidence presented, we think a reasonable person would not be warranted in finding beyond a reasonable doubt that defendant took the five rings from the jewelry store.

Reversed.