Argued July 18, reversed and remanded for resentencing September 6,
reconsideration denied October 10, 1978, petition for review
denied February 21, 1979

STATE OF OREGON, *Respondent,*

*v.*

CHARLES EUGENE GIBSON, *Appellant.*

(Nos. 6506, 6507, CA 9890, 9891)

(Cases consolidated)

583 P2d 584

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Kathleen A. Dodds, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Defendant appeals after his conviction in a trial without a jury on two counts of assault in the second degree. ORS 163.175. He was sentenced to two ten-year terms of imprisonment to run concurrently. The defendant assigns as errors that the court erred in finding him guilty of the assault counts and that the trial court erred in failing to state adequate reasons under ORS 137.120(2) for the sentences imposed.

At approximately 1 a.m. on July 29, 1977, the defendant, his wife and his male companion entered a tavern in Madras, Oregon, thus beginning a modern version of a tale of the Old West. The companion was permitted to use the phone at the bar to call the home of the proprietor of the tavern. After he was finished, defendant also asked to call the proprietor. He was told that it was too late to disturb him, but was permitted to call anyway. After defendant had finished his call, he returned to the pool table. Defendant's wife approached the bar and asked the bartender (a woman) why she was "giving her man a bad time." She proceeded to grab the bartender by the hair and a struggle ensued. The bartender's daughter, who was also working, came to the aid of her mother. Defendant joined the fracas. He separated the bartender from the entanglement and began hitting her on the head and body.

A male came to her defense and engaged in a scuffle with defendant. The momentum from that struggle carried both of them out the back service door near the end of the bar. The door had been held open by a large rock "somewhat larger than a softball but not as large as a football." Outside the customer and the defendant momentarily separated. The customer picked up the rock and threw it about four feet, striking defendant in the middle of the forehead. Defendant fell to his knees, but was not unconscious.

The bartender's daughter by now had extricated herself from the fight with defendant's wife. She

pulled the customer back in the door and locked it. About this time, defendant's male companion testified defendant's wife dropped a gun in his lap and said, "Here, keep this." When the bartender's daughter reentered the bar, defendant's wife was behind the bar and the two of them began fighting again. Defendant, who had been locked out at the back door, came around and entered the front door. His wife told him that the companion had defendant's gun.

The bartender moved to the end of the bar toward the phone. Defendant grabbed the gun from his friend's belt and intercepted her at the phone. He struck her with the gun in the forehead and again in the back of the head as she was falling. The gun discharged with the first blow, lodging a bullet in the ceiling. The daughter grabbed his arm before he could strike her mother a third time, and she was struck. Defendant then told everyone in the tavern to get on the floor, and he, his wife and companion left.

The defendant's first assignment (that the court erred in finding him guilty of two counts of assault) is grounded on contentions that he was justified in coming to the assistance of his wife, that the evidence showed self-defense as a matter of law, and that the blow in the forehead from the rock thrown by the male customer put defendant in a state of diminished capacity.

The first and second contentions are without substantial merit. "A person cannot justify himself if he does more in defense of another than the latter could do for himself." *Linkhart v. Savely,* 190 Or 484, 227 P2d 187 (1951). There was direct evidence from which it could be inferred that defendant's wife acted unlawfully in the first instance when she grabbed the bartender, and that the force used by defendant was not justified. *See* ORS 161.209 and 161.215(2). "After the jury verdict, we look to the evidence most favorable to the state's case to see if it, if believed, could support the verdict." *State v. Gross,* 19 Or App 187,

[ 114 ]

188, 526 P2d 1050 (1974). The issue is not whether we believe defendant guilty beyond a reasonable doubt, but whether the evidence was sufficient for the trier of fact so to find. *State v. Krummacher,* 269 Or 125, 137-38, 523 P2d 1009 (1974); *State v. Zauner,* 250 Or 105, 110, 441 P2d 85 (1968). There was sufficient evidence.

Defendant's claim that he suffered diminished capacity because of the blow to the head was supported only by testimony from a psychologist who said that the defendant "in his injured state could have perceived the bartender as blocking his and [the wife's] paths to safety," and that defendant saw her as "someone for whose safety he was at least partially responsible." The psychologist also said:

> "It is to be clearly understood that physiological psychology is not my major area of specialization and the basis for my opinion is Richard F. Thompson's Introduction to Physiological Psychology, 1975, Harper and Row Publishers, New York."

Defendant did not come forward with any other testimony to support the diminished capacity defense. "[T]he trier of fact is not bound to accept the opinion of any expert." *State v. Sands,* 10 Or App 438, 440, 499 P2d 821, *rev den* (1972). Reasonable men could differ on defendant's mental state, and therefore the question was properly for the trier of fact. *State v. Siens,* 12 Or App 97, 104, 504 P2d 1056, *rev den* (1973).

Defendant's second assignment is that the trial court erred in failing to state adequate reasons for the sentences imposed. The pertinent portion of the transcript is:

> "THE COURT: Well, you know, I think we could debate this thing for a week, but, Gibson, there is just no way you are going to walk away from this thing. We're just not—we're not going to tolerate crimes of violence in Jefferson County. Now, what I end up giving you, I think, is probably under the new system of the Parole Board as academic. They have got a matrix that says you are going to be out of there in such and such a time, and

if you keep yourself reasonably clean while you are down there and don't lose any good time, you are going to get out according to the computer, see, and like I've indicated before, you know, if this was just a bar room brawl among a bunch of men, I'd let you walk away from it, but you know, taking a gun into that place, I can't do it. I'm going to sentence you to the Oregon Corrections Division for a period of ten years on each—on each indictment and I think that's academic. I don't think it makes any difference whether I say two, four, five or six. You know ten years is the maximum and I don't like this particular situation. I do think that these sentences should run concurrently, and I say that because I consider this as all being one separate incident. * * *"

Defendant argues that adequate reasons were not given for the sentence imposed because the court indicated that if this had been a brawl between men, he would have let defendant walk away. Defendant ignores the rest of that comment. The court also said, "[T]aking a gun into that place, I can't do it."

Defendant, however, submits that the evidence did not show he brought the gun into the tavern. There was evidence from which the trial court could have inferred that defendant was responsible for bringing the gun into the tavern. For example, defendant's companion testified:

"Q. Do you recall anybody telling Mr. Gibson that you had the gun?

"A. Yes.

"Q. Who was that?

"A. Layne [defendant's wife].

"Q. Do you recall where you were when this happened?

"A. That was just shortly after the gun was dropped on my person and I headed towards the back door. There Gene came out from behind the bar and asking her where his gun was and she said I had it. Then that is when he grabbed it off my person."

Taken in full, the reasons stated were adequate except that the court erred in saying that it did not matter whether he sentenced defendant to "two, four,

five, or six years" because of the "matrix system" of the Oregon State Board of Parole. That reflects an erroneous premise for the term imposed, because the sentence fixed by a trial court is not academic. The Board of Parole is not authorized to keep an individual incarcerated beyond the maximum period of imprisonment set at sentencing. ORS 144.785(3); *see also State v. Dinkel,* 34 Or App 375, 579 P2d 245 (1978), and ORS 137.120(2).

Reversed and remanded for resentencing.