Argued July 6, affirmed July 30, 1965

# STATE OF OREGON *v.* DEAN

404 P. 2d 797

*J. Raymond Carskadon,* Portland, argued the cause and filed briefs for appellant.

*George Joseph,* Deputy District Attorney, Portland, argued the cause for respondent. On the briefs were George Van Hoomissen, District Attorney, Portland, and Desmond D. Connall, Deputy District Attorney, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

SLOAN, J.

Defendant was convicted of the second degree murder of a three year old boy, Richard Schmidt. The boy was the son of a woman named Jean Schmidt with whom defendant was living at the time of the alleged crime. The state's evidence was all circumstantial. Defendant claims it was not sufficient to support a verdict and that the trial court should have ordered a verdict of acquittal. The failure of the trial court to direct a verdict is the basic assignment of error on this appeal.

The test to be applied in meeting the suffi-

ciency of circumstantial evidence has been frequently stated. A complete statement is found in *State v. Dennis,* 1945, 177 Or 73, 159 P2d 838, 161 P2d 670. There is no need to repeat it. The state is required to produce cogent and convincing evidence which must be inconsistent with any reasonable theory of innocence. But in passing upon the sufficiency of the evidence we do not weigh the evidence or dissolve the conflicts. We must accept as true the state's evidence. *State v. Dennis,* supra, at 177 Or 78.

■ On the date of the boy's death, October 20, 1962, defendant and the deceased boy as well as the latter's five year old brother and his mother were living in a motor court apartment in Portland. They purported to be Mr. and Mrs. Dean and their two sons. Before coming to Portland some weeks before they had lived in Boise, Idaho. Witnesses were produced from the motel in Boise where the "family" had lived who testified that they had seen Ricky with black eyes, bruises, and spots on his head where hair had been pulled out. One witness from Boise testified that he had seen defendant hit Ricky with considerable force. Witnesses living in the Portland motor court also testified that they had seen Ricky with black eyes and other bruises.

Two college students who lived in the apartment next to defendant's testified that during the night of October 12, 1962, the day of the Columbus Day storm, they heard thumpings in the next door apartment and crying or whimpering. The next day they had seen Ricky with evidence of fresh bruises and injury. A week later, about midnight of October 19-20, 1962, one of the young men heard similar thumping noises and a few minutes later observed defendant's car drive away.

It is an established fact that about 1 a.m. on October 20, defendant and Jean Schmidt brought Ricky to the Police Emergency Hospital. He was unconscious. The attending doctor recognized that the boy's condition was serious. The doctor made immediate arrangements to have him taken by ambulance to St. Vincent Hospital. The emergency facilities of the hospital were activated and appropriate medical specialists were called. The latter attempted, by neurosurgery, to relieve pressure on the brain. They detected a small amount of fresh blood and ". . . noted a great deal of swelling in the brain." They could not find blood gathered in a large clot, the removal of which, it was hoped, would have relieved the pressure. They were unable to relieve the boy's condition. He died a few hours later.

An autopsy, pathological and other examination, later disclosed that the cause of death, eliminating technical language, was from multiple brain hemorrhages caused by traumatic head injuries. Some of the hemorrhages were found to have been three to five days old. Others were considered to have occurred within 24 hours before death. The doctors also found injury to the liver and other abdominal and bodily injury and bruising which they stated could only have been as a result of trauma. The doctors also expressed the opinion that the appearance of the external bruising caused them to believe that it was most likely caused by a man's fist or open hand. Medical findings and reasons were stated to support the medical experts' opinions.

Defendant testified that on the night of about October 14, 1962, Ricky had fallen down a flight of about twelve steps. This, he claimed, caused some

bruising and a black eye. He testified that on the night of October 19-20, that while he was asleep Ricky had climbed on a chair to open the entrance door to the apartment and had fallen from the chair and down a flight of two or three steps. On both nights he was caring for the boys while Jean Schmidt, the mother, was at work. He testified that when he found Ricky after the last fall that the boy was unconscious, that he took the boy first to where the mother worked and the two of them took him to the emergency hospital.

In addition to the testimony of the medical experts as to their opinion as to what was the medically probable cause of the boy's internal and external wounds, they also testified that it was most unlikely that all of the injuries could have been caused by the falls described by defendant.

The evidence meets the test previously stated. The real problem presented to the jury was to examine the trustworthiness of the conflicting evidence and inferences as to the cause of the injuries which produced death. If the jury accepted the medical testimony, as it did, defendant was obviously the only person who could have inflicted the injury. And the striking coincidence of the sounds heard by the young men in the apartment next door to defendant's apartment and the medical findings of probable time of injury could not have escaped the jury.

> "The question before this court, however, is not the same as that which was before the jury. We are not directly concerned with the weight of the evidence, nor with the conflicts in the testimony, nor with the credibility of the witnesses. It is our duty to determine if there was sufficient circumstantial evidence of guilt from which the jury, in the per-

formance of its function as triers of the fact, could properly find a verdict of guilty. * * *. We weigh and examine the evidence only to the extent necessary for the performance of this duty. Defendant's motion for a directed verdict is in the nature of a demurrer to the evidence which admits the truth of the evidence of guilt and all reasonable inferences therefrom. * * *." (*State v. Dennis,* supra, 177 Or at 78).

No error was committed in allowing the jury to perform its essential function in the case.

■ Defendant also assigns error for the refusal of the court to grant a mistrial. The motion was made following a volunteer statement to the jury by one of the investigating officers that he had seen defendant on an occasion when he had gone to serve a Federal fugitive's warrant upon him. The statement should not have been made but we find nothing so prejudicial as to justify a holding that an abuse of discretion was committed.

■ A few days after Ricky's death, defendant and Jean Schmidt at an officer's request, came to the sheriff's office in the courthouse. They were then asked to describe what they thought was the cause of Ricky's death. It is now claimed that this violated *Escobedo* and *Neely* rights. The case does not even approach that problem. It was not an interrogation, it was a very preliminary investigation. The same statements then made by defendant had been made by him to several of the doctors and were later given by him in the courtroom. *State v. Unsworth,* 1965, 240 Or 453, 402 P2d 507, has already answered this claim of error.

Judgment affirmed.