Argued March 27, reversed and remanded April 7, 1972

STATE OF OREGON, *Respondent, v.*
JOE LUTHER MITCHELL, *Appellant.*

495 P2d 780

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on

the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Defendant was indicted for first degree murder. Former ORS 163.010. The case was tried to the court which found defendant guilty of second degree murder. On appeal defendant raises two assignments of error, one of which is that there was insufficient evidence upon which to base a conviction.

The evidence of the alleged crime and defendant's participation was entirely circumstantial. Decedent's nude body was found on the morning of December 3, 1970, in his apartment bed. A stocking tied around the decedent's head bound his hands behind his head and, also, held a pillow case against his face, which, in turn, held a sock in his mouth. Death resulted from asphyxiation, occurring some time between the night of December 2 and the morning of December 3. A test showed decedent had a blood alcohol content of .24 at the time of death, which the state's pathologist described as "very significant intoxication." Nothing in the physical evidence indicated decedent's bindings by themselves and before asphyxiation would have prevented him from rising up, or from leaving the bed. There was no sign of a struggle, but there was what one detective identified as a shoe footprint on a bedsheet.

The state's theory was that defendant, along with a number of other persons, attended a party at the decedent's apartment, that there were homosexual

activities at the party, that decedent was bound up, and he was asphyxiated while so bound up.[1] No motive for the homicide was advanced by the state.[2]

Evidence indicated there had recently been a gathering at the apartment. A number of empty beer bottles and dirty plates and glasses were lying about the apartment. Magazines and literature found in the apartment suggested decedent may have been homosexual. Police technicians testified they found 100 body hairs and a blood stain on the soiled bedsheet upon which decedent's body was discovered. On it also were unidentified yellowish stains, a dog hair and a footprint.

Scientific analysis showed that identifiable fingerprints taken from a drinking glass, partially filled with a whisky drink, found on a table next to the bed were those of the defendant and decedent. Approximately 30 of the hairs taken from the bed matched

---

[1] A footnote in defendant's brief states he is not attacking the finding of *corpus delicti*. However, in his brief he argues "the possibility that the asphyxiation was the result of an accident," either on the part of decedent, or others engaging in homosexual activity with him. This is an argument of lack of proof of *corpus delicti*. The argument relates to the circumstances which point toward homosexual activity, positive evidence of decedent's intoxication, lack of motive, and absence of evidence of a struggle. Cross-examination of the pathologist also raised the possibility of accidental death. The pathologist testified he was familiar with cases in which teenage boys while masturbating had induced asphyxiation for the purpose of accentuating sexual satisfaction, and had accidentally choked to death. He had not seen a similar circumstance between two or more persons engaged in sado-masochistic or other deviant activities. He had not before known of a situation similar to that in the case at bar.

[2] "* * * [T]hough the existence of motive is not indispensable to conviction, such proof is of 'great importance' in cases depending upon circumstantial evidence * * *." State v. Sack, 210 Or 552, 556, 300 P2d 427 (1956), *dismissed* 353 US 962, 77 S Ct 1048, 1 L Ed 2d 912 (1957).

head and pubic hairs taken from defendant.[9] Uniden-
tified were 30 other latent fingerprints found on
various objects in the apartment, seven different types
of body hair from the bed, and the blood stain. One of
the unidentified hairs was blood coated but no evi-
dence was offered about the blood type. The prosecu-
tion produced evidence that the blood stain on the
sheet was type "A." It produced no evidence of the
decedent's or the defendant's blood type. The defend-
ant produced evidence that his own blood type is "O."
It was not established when any of the fingerprints
were made or how long the hairs and blood stain had
been on the bed.

The state in its brief argues:

"* * * [T]he fingerprint on the glass is highly
incriminating, because of its position on a highly
portable object which had been placed in the im-
mediate proximity of the deceased's body. The
presence of defendant's head and pubic hairs on
the deceased's bed further implicates him in the
abnormal activities which led to the homicide in
this case * * *."

While it is true that the state may rely solely
on circumstantial evidence for conviction, such evi-
dence

"* * * must not merely coincide with, render
*probable,* and be consistent with, the guilt of the
accused, *but it must be inconsistent with any rea-
sonable theory of his innocence and incapable of ex-
planation upon any other rational hypothesis than*

---

[9] The matching of hairs is not conclusive proof that the
matched hair came from the defendant. Hair from other people
of the same race could also match that taken from the bedsheet.

An assignment of error we do not reach here challenges the
legality of taking head and pubic hair from defendant before he
was arrested and without a search warrant.

*that of guilt * * *.*" *State v. Dennis,* 177 Or 73, 77, 159 P2d 838, 161 P2d 670 (1945).⊕ (Emphasis supplied.)

The evidence indicates that defendant and at the least several other persons, some Caucasian, some Negro, had been at some relatively recent time separately or together in decedent's apartment under circumstances that possibly cast suspicion upon them.

To infer that there was a deliberate killing from these circumstances, and to further infer that defendant committed the homicide from the other facts in evidence, is to base inferences on speculation. *See State v. Crenshaw,* 6 Or App 55, 486 P2d 581 (1971).

Therefore, despite the deference we must accord the fact finder, the judgment of the trial court must be reversed and this cause remanded with instructions to dismiss the indictment.

SCHWAB, C. J., specially concurring.

I agree with the result, but disagree with the majority's reliance on *State v. Dennis*:

"* * * [circumstantial evidence for conviction] must not merely coincide with, render probable, and be consistent with, the guilt of the accused, but it must be inconsistent with any reasonable theory of his innocence and incapable of explanation upon any other rational hypothesis than that of guilt * * *." *State v. Dennis,* 177 Or 73, 77, 159 P2d 838, 161 P2d 670 (1945).

I believe the majority is confusing two separate

---

⊕ This language from State v. Dennis, supra, forms the basis for the second paragraph of Oregon State Bar Uniform Jury Instruction No. 202.05. The wording is the same, except that the words "reasonable basis" are substituted for "rational hypothesis." Accepting this substitution, we do not think that the circumstantial evidence in this case meets the test.

questions: (1) in a circumstantial evidence criminal case what is the proper standard for the jury to apply to the state's case in determining guilt or innocence?; and (2) in such a case, following a finding of guilt, what is the proper standard for a reviewing court to apply in determining whether the evidence is sufficient to sustain the verdict?

I infer from the majority's reliance on the quotation from *Dennis* that they believe it sets forth the proper standard for a reviewing court to apply to a circumstantial evidence case. I disagree with that. As I read the cases, the *Dennis* language in question is only relevant to the first question, that is, the proper standard for the finder of fact to use in a case like this. Indeed, language identical to that quoted from *Dennis* appears in Oregon Uniform Jury Instruction No. 202.05.

When, however, a finder of fact has determined the defendant to be guilty, we should apply a different standard to determine the validity of the verdict. As the Oregon Supreme Court stated in another circumstantial evidence case:

> "* * * we may not set aside the decision of the jury where it hinges on a question of fact, such as whether the defendant did commit the acts charged, unless we can affirmatively say there was no evidence to support the verdict." *State v. Duggan,* 215 Or 151, 333 P2d 907, 916 (1958).

I believe the distinction I am suggesting between the different standards that should be applied to circumstantial evidence by the jury and by a reviewing court is explicitly or implicitly recognized in the following cases: *State v. Dennis,* supra; *State v. Duggan,* supra; *State v. Zauner,* 250 Or 105, 441 P2d 85 (1968);

*State v. Thornton,* 246 Or 377, 425 P2d 529 (1967);
*State v. Dean,* 241 Or 124, 404 P2d 797 (1965); *State
of Oregon v. Watts,* 208 Or 407, 301 P2d 1035 (1956);
*State v. Freeman,* 92 Adv Sh 183, 4 Or App 627, 481
P2d 638 (1971).

I join in the result reached by the majority because I believe that even under the proper standard of review the evidence was not sufficient to support the finding of guilt in this case.