Argued November 29, 1972, affirmed January 5, petition
for rehearing denied January 31, petition for
review allowed April 24, 1973
See later issue of Oregon Reports

STATE OF OREGON, *Respondent, v.* JAMES
LEWIS BREWER (No. 72-612-C),
*Appellant.*

504 P2d 1067

J. *Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Defendant and Emmett Ray Muncey were jointly indicted for the crime of conspiracy to commit first degree robbery in violation of ORS 161.450,[1] but were tried separately. Defendant Brewer waived a jury, was tried by the court and found guilty as charged.[2] He appeals.

---

[1] ORS 161.450(1) provides:

"A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."

[2] Defendant Muncey was tried and convicted of the same crime by a jury and likewise appealed. Muncey's appeal was also decided this day (State v. Muncey, 12 Or App 118, 504 P2d 1052, Sup Ct *review denied* (1973)).

At trial defendant moved for a judgment of acquittal. The court denied this motion and, on appeal, the defendant contends that this denial was error. Defendant challenges the sufficiency of the evidence to support a verdict of guilty on the crime charged.

The defendant and Muncey were arrested on the night of April 14, 1972, in Medford for possession of a sawed-off shotgun. At the time of arrest the two men were in a car and had with them two shotguns, one of which was the sawed-off shotgun.

Earlier that same evening, before the arrest, the defendant and Muncey had met with two undercover narcotics officers. One of these officers, Officer Fox of the Oregon State Police, testified as to his conversations with the defendant and Muncey. This testimony, and other evidence introduced by the state, indicated two possible alternative plans of the alleged conspiracy. The existence of the first plan was gleaned from a statement by defendant in the presence of the undercover officers that he and Muncey had discussed robbing a grocery store earlier in the evening, had entered the store, but withdrew because of the presence of other people. The other was that the conspirators intended to commit what was termed a "kick-in" of a tavern sometime later.

Before reviewing the evidence further to test its sufficiency, we must first look to the relevant statutes to define what the state was required to prove to sustain the verdict.

The state's theory at trial was that the defendant conspired to commit robbery using a gun. Thus, as to the robbery elements of the conspiracy charge,

the state had to show that the defendant conspired to commit theft from another person while armed with "a deadly weapon." ORS 164.415(1)(a); and see ORS 164.395.

■ Proof of conspiracy requires a showing of agreement between the defendant and one or more persons. ORS 161.450. As part of the agreement, the defendant must have had "the intent with others of committing a certain crime," here the "certain crime" of first degree robbery. Proposed Criminal Code, Final Draft and Report 57, at 60, § 59. Proof of an overt act in furtherance of the conspiracy is no longer required by the Oregon statute. The crime is complete when the conspiratorial agreement is entered into. The unlawful agreement and not its accomplishment is the gist or essence of the crime of conspiracy.

■ Defendant's argument is that, even assuming that the state did prove an agreement and an intent to commit theft, it did not demonstrate an intent to use a deadly weapon in the theft. Such a defect in proof would require reversal of the defendant's conviction for conspiracy to commit first degree robbery. For, "[u]nder any rationale of the crime, it is certain that conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself * * *." *Developments in the Law—Criminal Conspiracy,* 72 Harv L Rev 920, 939 (1959). *See also,* Model Penal Code, Tent. Draft No. 10, § 5.03, at 109.

■ The existence of a conspiracy, and its objective, may be proven by circumstantial evidence. *State v. Gagnon,* 2 Or App 261, 465 P2d 737, Sup Ct *review denied* (1970). The conspiracy may be inferred from the circumstances and from "the declarations, acts

and conduct of the conspirators." *State v. Ryan,* 47 Or 338, 344, 82 P 703, 1 LRA (ns) 862 (1905).

We review the evidence in the light most favorable to the state. *State v. Johnson,* 10 Or App 423, 500 P2d 500 (1972); *State v. Zauner,* 250 Or 105, 441 P2d 85 (1968).

■ Much of the evidence at trial concerned the arrest of defendant and Muncey, the discovery of the shotguns in their car, and other matters not relevant to our concerns here. We search the record only for evidence of a conspiracy to rob, and particularly for evidence of an intent to use a deadly weapon, a gun, in a robbery.

Officer Fox testified as to a conversation between himself, another undercover policeman, the defendant and Muncey. This conversation occurred in defendant's car in a parking lot earlier on the evening of the arrest.

Officer Fox stated that at that time the defendant, on being asked "how things had gone," had responded:

> "* * * [N]ot very well, he related that they'd gone into a store somewhere out past the state office buildings and while they were in the store they couldn't carry out their—I don't recall the exact word—job or whatever it was. And that they had to leave because other people showed up."

Officer Fox said nothing about the use of a gun during this "job." He did see the shotguns in the defendant's car, and, he testified, the defendant said something about wanting to have a shotgun "cut down" because "the guns they had were really too big to be carrying around * * *." According to Officer Fox, the defendant also offered to sell one of the shotguns

"after they were done with it because it was too nice to throw off the bridge or dispose of."

Officer Fox also testified that the defendant was planning what the defendant had called a "kick-in" of a tavern, and that the defendant was worried about a person who stayed inside the tavern. Officer Fox said he wasn't sure what a "kick-in" was, but that he thought it meant "entering a place that was already closed." The defendant apparently did not mention any intended use of guns.

James Pack, an acquaintance of the defendant, also testified for the state at trial. He said that the defendant had been attempting to buy a handgun because "it wasn't too cool to go walking into a place with a shotgun because everybody would know what was going on."

Pack also testified as to conversations had with the defendant while both were in jail after the defendant's arrest. Mr. Pack said that he "got the impression" the defendant was "going to knock off a place." When asked if the defendant intended to use a gun, Pack replied:

> "* * * He said that he was intending on going, said, you know, wanted something a little better for going in and knocking off a place."

The only other relevant evidence came from Patrolman McCartney of the Medford police. He overheard the defendant say, as he was being fingerprinted, that the defendant and Muncey had been "* * * 'driving around trying to get our guts up.' * * *"

After reviewing the entire record we conclude that there was sufficient evidence from which the trier of fact could reasonably infer an intent to use a

deadly weapon in the commission of the crime they conspired to commit, namely, first degree robbery.

The evidence was that the two men had been driving around the Medford area with two shotguns in the car, "trying to get our guts up," with the purpose in mind of committing an armed robbery in order to secure money to go to California and purchase a supply of drugs. While there was no direct evidence that either this defendant or his co-conspirator actually carried the sawed-off shotgun into the supermarket, there was evidence that one or both of them entered the market with intent to commit the robbery but withdrew because of the arrival of other people.

In addition there was evidence from which the trier of fact could reasonably infer that the "kick-in" of the tavern, in which a watchman was believed to be sleeping, was to have been accomplished with the defendant and his co-conspirator armed with shotguns with the intention of overcoming any possible resistance.

Further, the defendant's actions and accompanying statements in (a) sawing off the shotgun, (b) attempting to buy a handgun, and (c) expressing a desire to sell one shotgun after the planned crime or crimes, also indicate that he and Muncey had conspired and intended to commit first degree robbery.

Affirmed.