Argued June 1, affirmed December 20, 1973

## STATE OF OREGON, *Respondent, v.* JAMES LEWIS BREWER, *Petitioner.*

517 P2d 264

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

BRYSON, J.

The defendant Brewer and one Muncey[1] were jointly indicted in Jackson County for conspiracy to commit first degree robbery. ORS 161.450. Defendant waived a jury and was found guilty by the trial court. The Court of Appeals upheld the conviction[2] and we accepted review.

The defendant and Muncey were arrested during the early morning hours of April 15, 1972, in Medford, Oregon. They were subsequently indicted for the crime here involved.

The sole issue raised on review is that "[t]he evidence was not sufficient to prove a conspiracy to commit robbery in the first degree because the state did not show an intent to use a deadly weapon in the commission of the alleged crime."

The defendant argues that "[w]hile the defendant would agree with the conclusions of law drawn by the Court [Court of Appeals] regarding the crime of robbery in the first degree, defendant submits that even assuming the state may have proved an agreement and/or intent to commit theft, it did not prove defendant guilty of a conspiracy to commit robbery in the first degree because it failed to show an intent to use a deadly weapon in the commission of the theft." A review of the evidence discloses the following: Defend-

---

[1] Muncey was found guilty by separate jury trial and the conviction was affirmed on appeal. State v. Muncey, 12 Or App 118, 504 P2d 1052 (1973), *review denied* April 24, 1973.

[2] State v. Brewer, 12 Or App 105, 504 P2d 1067 (1973).

ant asked an acquaintance, James Pack, if he had a small handgun for sale or trade but did not reveal his intended use of the gun. Pack arranged to have defendant meet with Michael Waltman, an undercover police officer who Pack knew had a gun for exchange. At the meeting with defendant, Waltman mentioned that he had a valuable handgun and defendant replied that he had some shotguns. Defendant and Muncey subsequently met Waltman and discussed "drugs and guns." The defendant testified as follows concerning that conversation:

"Q.   Did you talk to him at all about the possibility of armed robbery or anything of that nature?

"A.   I told him it wouldn't be hard around here."

By prearrangement, undercover officers Waltman and Fox met defendant and Muncey in the parking lot of the Junction Tavern in Medford. Waltman asked defendant how things had gone. Defendant replied that things had not gone very well and that he and Muncey had entered a store but they could not carry out their "job" because a large number of people were present. Defendant stated he was going to see a man to have him cut down the shotguns because "the guns they had were really too big to be carrying around." At this time the officers observed two shotguns in defendant's car. Officer Fox testified that the defendant "wanted to know if we wanted to buy it [defendant's shotgun] after they were done with it because it was too nice a gun to throw off the bridge or dispose of."

Defendant then told the officers that he and Muncey were planning a "kick-in" of a tavern later that night but that they were concerned about a person who supposedly slept in the tavern. Officer Fox testified that to him the term "kick-in" meant "entering a place

that was already closed." Defendant indicated to Pack that he had been unable to trade a shotgun to Waltman for a handgun. Pack testified:

"Q. Did you have any other conversation with him at that time regarding any weapons?
"A. Well, Jim [defendant] indicated to me he'd like to get a small hand gun. He said that it wasn't too cool to go walking into a place with a shotgun because everybody would know what was going on."

When the defendant was booked into jail, Officer Steven C. McCartney overheard another officer ask defendant what he and Muncey had been doing driving around Medford. Defendant replied, "We were driving around trying to get our guts up."

James Pack had a conversation with the defendant while he was in jail regarding which Pack testified as follows:

"Q. * * * Do you recall any conversation to the effect that Mr. Brewer indicated he was going to pick off a couple of places for money for the purchase of drugs?
"A. Well, Mr. Brewer didn't indicate to me any specific place. He indicated to me he was planning on obtaining money with a gun, with the weapon.

"Q. Do you recall specifically any words that he used as to how he was going to obtain that money?
"A. I couldn't make an exact quote. I got the impression he was going to knock off a place."

On cross-examination Pack testified:

"A. He [defendant] didn't come right out and say 'I'm going to commit armed robbery.' He said that he was intending on going, said, you know, wanted something a little better for going in and knocking off a place."

The defendant was indicted under ORS 161.450 (1), Oregon Criminal Code of 1971, which states:

"A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony [first degree robbery] or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."

The "conduct" sought to be proved by the state in this case was an agreement between defendant and Muncey to commit a robbery while armed with a deadly weapon. ORS 164.415 (a).

The adoption of ORS 161.450 and related sections in the new Criminal Code pertaining to conspiracy constitutes substantial changes from previous Oregon law, ORS 161.320 (repealed 1971). For a discussion of the changes, see Crim. Law Rev. Comm., Proposed Oregon Criminal Code § 59, Commentary (1970); Model Penal Code § 503, Comment (Tent. Draft No. 10, 1960), although Oregon statute departs from Model Penal Code; and Glenn, *Definition of Conspiracy In the Oregon Code: A Unique Approach to the Crime,* 51 Or L Rev 595 (1972).

■ Under the new statute, the requirement of an overt act has been removed. The Criminal Law Revision Committee explained the reason for removing the overt act requirement as follows:

"The gravamen of a conspiracy is recognized as the combination, the coming together of two or more persons which may greatly increase the chance that the substantive crime contemplated will be consummated. The comment in the Michigan proposed code is appropriate here as to the efficacy of the overt act requirement:

"'The Committee could find no value in adding such a requirement, particularly since the insig-

nificance of the acts that will meet the requirement render it almost meaningless.' (Comment to § 1015, 99 (1967))."

See also, *Developments in the Law—Criminal Conspiracy*, 72 Harv L Rev 920, 945-49 (1959).

■ The Court of Appeals held that the state was required to prove that defendant had intended to use a deadly weapon. The basis for its holding is as follows:

> "* * * For, '[u]nder any rationale of the crime, it is certain that conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself * * *.' Developments in the Law—Criminal Conspiracy, 72 Harv L Rev 920, 939 (1959). *See also,* Model Penal Code, Tent. Draft No. 10, § 5.03, at 109." (Emphasis theirs.) 12 Or App at 108.

We agree with this statement of the law. The state had the burden of proving beyond a reasonable doubt, as alleged in the indictment, that defendant and Muncey conspired and agreed with each other to commit robbery in the first degree.

The petitioner does not argue the merits of the conspiracy statute but contends that the state "did not prove defendant guilty of a conspiracy to commit robbery in the first degree because it failed to show an intent to use a deadly weapon in the commission of the theft."

This court has the difficult task of determining whether the inferences that can be drawn from the evidence are sufficiently reasonable to amount to proof beyond a reasonable doubt that defendant and Muncey conspired to commit theft while armed with a deadly weapon.

In *State v. Russell,* 252 Or 630, 632, 451 P2d 858 (1969), the only assignment of error was defendant's contention that there was insufficient evidence to prove his intent. We stated, "The evidence of intent was circumstantial. The jury was entitled to draw all reasonable inferences that were capable of being made from the circumstances. *State v. Zauner,* 250 Or 105, 441 P2d 85 (1968); *State v. Harris,* 241 Or 224, 231, 405 P2d 492 (1965). * * *"

As previously set forth, defendant first asked his acquaintance, Pack, if he had a small handgun for sale. Pack arranged for defendant to meet with undercover Officer Waltman. Defendant Brewer, Muncey, and Waltman discussed armed robbery and defendant stated, "I told him it wouldn't be hard around here." Defendant had two shotguns and shells in his car. After the aborted robbery at the store, defendant was trying to get a smaller gun. He told Pack "* * * it wasn't too cool to go walking into a place with a shotgun because everybody would know what was going on." Defendant subsequently altered and shortened the barrel of one shotgun, which was in his car when apprehended. When defendant was booked into jail he was asked why he and Muncey were driving around Medford, and defendant replied, "We were driving around trying to get our guts up." Defendant also indicated to Pack that he (defendant) was planning on obtaining money with a gun. Pack got the impression that defendant "was going to knock off a place."

■ From this evidence and the entire record, we conclude there is evidence from which reasonable inferences can be drawn to prove that defendant conspired with Muncey to commit theft while armed with a deadly weapon.

Affirmed.