384 March 6, 2024 No. 157

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM JAMES GUERRERO,
aka William Guerrero, aka William J. Guerrero,
aka William Gurrero, aka U438126,
*Defendant-Appellant.*

Clackamas County Circuit Court
21CR40711; A178684

Katherine E. Weber, Judge.

Submitted January 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kirsten M. Naito, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant was convicted of second-degree kidnapping, ORS 163.225, strangulation constituting domestic violence, ORS 163.187, fourth-degree assault constituting domestic violence, ORS 163.160, and menacing constituting domestic violence, ORS 163.190. On appeal, he challenges his kidnapping and menacing convictions, arguing that the evidence was legally insufficient to prove those crimes and that the trial court therefore erred in denying his motions for a judgment of acquittal. We conclude that the evidence was legally sufficient and, accordingly, affirm.

On review of the denial of a motion for a judgment of acquittal, we examine the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). Accordingly, we describe the trial evidence in the light most favorable to the state.

In the summer of 2021, defendant was living in a motorhome on a large property in a remote area in Sandy. Marino owned the property and lived in a house on the property. Defendant's girlfriend, W, often visited defendant.

On the morning of August 21, around 6:45 a.m., Marino heard defendant's dog barking and, concerned about a possible intruder or coyotes, went outside with a loaded handgun to investigate. He heard a commotion coming from the motorhome. He could hear W screaming and defendant hitting her. Marino approached the side door of the motorhome, which was open, and saw defendant hitting and choking W while she pleaded for him to stop. Marino tried unsuccessfully to get their attention. Marino fired a warning shot into the air, but even that did not get their attention. Marino returned to his house and asked his girlfriend to call 9-1-1. Marino subsequently went back outside.

At 7:01 a.m., defendant "pull[ed]" and "dragg[ed]" W from the motorhome to a nearby pole barn that was used as a shop and where defendant parked his Jeep. W was

twisting, saying "stop," and "trying to get away." Pulling her by the neck, defendant forced W into the shop, opened the bay door, and pulled W toward the Jeep. Marino moved his pickup truck to try to block the Jeep from leaving, but defendant maneuvered the Jeep around the truck. At that point, Marino exited the truck and shot the Jeep's tire. The Jeep stopped, and W jumped out and ran toward the house. Defendant briefly chased W, then turned and ran at Marino. He was extremely angry and told Marino to mind his own business. Marino fired two warning shots, but defendant did not stop, so Marino fired two more shots, hitting defendant in the leg. Defendant finally appeared to snap out of his rage. Law enforcement had not yet arrived, so Marino's girlfriend drove defendant to the hospital. After law enforcement arrived, W was transported to the hospital by ambulance. W's injuries included contusions, scrapes, bruised hands, petechiae in her eye and behind her ear, a broken nose, and swelling on the back of her head.

At the time of the incident, the motorhome had been parked on Marino's property for several months, the rear tires were flat, objects were strewn around the side and rear, an electric cord was running to the motorhome, numerous objects were piled on the driver's seat, and the driver's front windows were blocked.

Based on the August 21 incident, defendant was charged with kidnapping, strangulation, assault, and menacing. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the kidnapping and menacing charges, which the trial court denied. A jury found defendant guilty on all charges.

On appeal, defendant raises two assignments of error, asserting that the trial court erred in denying his motions for a judgment of acquittal on the kidnapping and menacing charges. We address each count in turn.

Second-degree kidnapping may be committed by asportation ("[t]ak[ing] the person from one place to another") or confinement ("[s]ecretly confin[ing] the person in a place where the person is not likely to be found"). ORS 163.225(1). Defendant was charged with kidnapping by asportation.

That crime occurs when a person, "with intent to interfere substantially with another's personal liberty, and without consent or legal authority, * * * [t]akes the person from one place to another[.]" ORS 163.225(1)(a). Defendant does not contest that the evidence was legally sufficient to prove the intent element of second-degree kidnapping, *i.e.*, that he intended to interfere substantially with W's liberty. *See State v. Wolleat*, 338 Or 469, 475, 111 P3d 1131 (2005) ("[T]he liberty interest that [ORS 163.225(1)] protects from interference is the interest in freedom of movement," and "for the interference to be substantial, a defendant must intend either to move the victim a 'substantial distance' or to confine the victim for a 'substantial period of time.'"); *State v. Anderson*, 329 Or App 754, 756-61, 542 P3d 449 (2023) (addressing the intent element for second-degree kidnapping). Rather, he argues that the evidence was insufficient to prove the conduct element of second-degree kidnapping, *i.e.*, asportation. We therefore limit our discussion to the conduct element.

To prove asportation, the state had to prove that defendant moved W "from one place to another" within the meaning of ORS 163.225(1)(a). A defendant moves a person "from 'one place' to 'another' only when the defendant changes the position of the victim such that, as a matter of situation and context, the victim's ending place is qualitatively different from the victim's starting place." *State v. Sierra*, 349 Or 506, 513, 254 P3d 149 (2010), *adh'd to as modified on recons*, 349 Or 604, 247 P3d 759 (2011). Someone who is moved a substantial distance is "more likely" to end up in "another" place, but "another important factor in determining whether the defendant moved the victim 'from one place to another' is whether the movement served to limit the victim's freedom of movement and increase the victim's isolation." *State v. Walch*, 346 Or 463, 475, 213 P3d 1201 (2009). Thus, for example, in *Walch*, the evidence was legally sufficient to prove asportation where the defendant moved the victim from her open driveway into his car trunk. *Id.* at 482.

Defendant argues that the evidence in this case was insufficient to prove asportation. He argues that the Jeep was not a qualitatively different place from the motorhome,

because the motorhome and the Jeep "were on the same property and were equally secluded and restrictive of the victim's personal liberty," and both were "mobile." Defendant further argues that, because Marino shot the Jeep's tire, forcing defendant to stop driving and providing W the opportunity to escape, defendant never got farther than the driveway and never transported W off the property. The state responds that a reasonable factfinder could find that defendant moved W to a qualitatively different place, either when he dragged her to the shop or when he dragged her into the Jeep.

We agree with the state. The Jeep was a qualitatively different place from the motorhome, because being in the Jeep isolated W in a way that made it more difficult for Marino to intervene on her behalf, and because the Jeep was mobile in a way that the motorhome was not due to the motorhome's flat back tires, electrical connection, inaccessible driver's seat, and covered driver's windows. The evidence was therefore sufficient to prove that defendant moved W "from one place to another" within the meaning of ORS 163.225(1)(a). The trial court did not err in denying defendant's motion for a judgment of acquittal on the second-degree kidnapping charge.

Turning to the menacing charge, "[a] person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury." ORS 163.190(1). Defendant contends that the evidence in this case was insufficient to prove the intent element of menacing, *i.e.*, that he intended to place W in fear of imminent serious physical injury. Defendant argues that "mere evidence of defendant's assaultive conduct" is insufficient to prove the intent necessary for menacing and that, even if a reasonable person in W's position might fear imminent serious physical injury, there was no evidence that defendant *intended* to place W in fear of imminent serious physical injury. Defendant also points to the lack of evidence of "threats, implicit or explicit." The state responds that, given the totality of the circumstances, a reasonable factfinder could infer from the

evidence that defendant intended to instill fear of imminent serious physical injury in W.

   We again agree with the state. "[A] defendant's entire course of conduct may be evidence of that defendant's intent to instill fear in the victim." *State v. Theriault*, 300 Or App 243, 254, 452 P3d 1051 (2019); *see also State v. Simmons*, 321 Or App 478, 483, 516 P3d 1203 (2022), *rev den*, 370 Or 740 (2023) ("Ultimately, whether circumstantial evidence is sufficient to support a given inference is a question of law."). Here, after viciously assaulting and strangling W—including breaking her nose—defendant dragged W by her neck out of the motorhome, into the shed, and into his Jeep, and then attempted to leave the property with her, at which point Marino would no longer be able to help her. One reasonable inference that could be drawn from that evidence (viewed in the light most favorable to the state) is that defendant intended to place W in fear of imminent serious physical injury, specifically fear that he would again assault her and cause her serious physical injury as soon as he was able to isolate her from Marino. That is not the only finding that the jury could have made as to defendant's intent, but the record would allow that as one reasonable inference. The trial court therefore did not err in denying defendant's motion for a judgment of acquittal on the menacing charge.

   Affirmed.