No. 320 May 15, 2024 601

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KIMBERLY LYNN MARTIN-THANISLAUS,
*Defendant-Appellant.*

Linn County Circuit Court
19CR05862; A178060

Brendan J. Kane, Judge.

Argued and submitted April 12, 2024.

Will Riddell argued the cause and filed the briefs for appellant.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reversed.

### KISTLER, S. J.

A jury found defendant guilty of two crimes: conspiring to tamper with a witness and tampering with that witness. Defendant raises two assignments of error on appeal. In her first assignment of error, she argues that the trial court should have granted her motion for a judgment of acquittal. She contends that no reasonable juror could find that she (1) agreed to induce a witness to either give false testimony in an official proceeding or unlawfully withhold testimony in an official proceeding or (2) in fact, sought to do so. We agree and reverse.[1]

In reviewing the denial of defendant's motion for a judgment of acquittal, we set out the historical facts and draw all reasonable inferences in the state's favor. *State v. Guerrero*, 331 Or App 384, 386, 545 P3d 1287 (2024) (stating that standard of review). Defendant's son was in a relationship with Janssen. One night, the son took one of Janssen's checks, forged her signature, and cashed it. An Albany police detective arrested defendant's son, and the state indicted him for forgery and identity theft. Shortly after he had been indicted, the son called defendant from jail and spoke with her several times. Those phone conversations were recorded and formed the evidentiary basis for the conspiracy charge against defendant. Roughly contemporaneously, defendant exchanged a series of text messages with Janssen, which formed the primary evidentiary basis for the tampering charge against defendant.

The question whether defendant conspired with her son to tamper with Janssen's testimony is separate from the question whether defendant in fact tampered with that testimony. Each crime can occur without the other. *Cf. State v. Brewer*, 267 Or 346, 350, 517 P2d 264 (1973) (an agreement made with the requisite intent is sufficient to prove a conspiracy to commit a crime). We begin with the conspiracy charge and briefly describe that offense before setting out the applicable facts.

---

[1] Because we agree with defendant that the trial court erred in denying her motion for a judgment of acquittal, we do not reach defendant's second assignment of error claiming that the court erred in denying her new trial motion.

A conspiracy to commit a crime requires proof that, with the requisite intent, two or more people agreed to commit a crime punishable as a felony. *Id.* (interpreting ORS 161.450(1)). As charged here, a conspiracy to tamper with a witness requires proof that a person agreed (and intended) to seek to induce a witness either to offer false sworn testimony in an official proceeding or to unlawfully withhold sworn testimony in such a proceeding. *See* ORS 162.285 (defining the crime of tampering with a witness); ORS 162.225(2) (defining an "official proceeding" as one in which sworn testimony or statements are received).

With that framework in mind, we turn to the evidence relevant to the conspiracy charge against defendant—the recorded phone calls that the son made to defendant after he had been indicted. In varying ways and with varying degrees of insistence, the son repeatedly asked defendant to persuade Janssen to tell either the detective who had arrested him or the deputy district attorney handling his case that he had paid Janssen back and that, as a result, she (Janssen) did not want to press charges. One exchange illustrates the rest. In one of their calls, the son told defendant: "Go to [Janssen's] house and don't take no for an answer. Like tell her to get down to the—like, fucking make her get down to the police station and not press charges. Please. Do that right now. Like, I need to get out of here, like, right now." The son expressed his belief to defendant that reimbursing Janssen mitigated, if it did not cure, his crimes and that he hoped the charges against him would be dismissed if Janssen told the authorities that she did not want to press charges.

A reasonable juror could find that, at some point during the phone calls, defendant agreed to do what her son asked. However, the express terms of the son's requests, which defendant agreed to carry out, did not ask defendant to persuade Janssen either to give or unlawfully withhold sworn testimony in an official proceeding. Rather, defendant agreed to try and persuade Janssen to tell the detective and deputy district attorney that she did not want to press charges—a unsworn statement that, if made, would

not be part of any official proceeding. Judged by its express terms, defendant's agreement with her son was lawful.[2]

The state does not dispute that proposition. It argues, however, that a reasonable juror could infer that defendant implicitly agreed to try and persuade Janssen to either offer false sworn testimony in her son's trial or to unlawfully withhold sworn testimony in his trial. To be sure, a trier of fact may draw inferences that are reasonably related to basic facts in the record. *See State v. Rainey*, 298 Or 459, 466, 693 P2d 635 (1985) (discussing inferences). But the state does not identify any basic facts in this record that would support the inference that, it contends, the jurors reasonably could have drawn.

Rather, the express terms of defendant's agreement were directed specifically and solely at a lawful act—persuading Janssen to make an unsworn statement apart from any official proceeding. They do not support a reasonable inference that defendant implicitly agreed to undertake a separate unlawful act—persuading Janssen to offer false sworn testimony or unlawfully withhold sworn testimony in an official proceeding. *See State v. Bailey*, 346 Or 551, 566, 213 P3d 1240 (2009); *State v. Ortiz-Saldana*, 288 Or App 230, 406 P3d 61 (2017) (following *Bailey*). Indeed, as the court observed in *Bailey*, "[t]he [state's] asserted inference seems particularly inappropriate in that it posits an inducement to commit an *unlawful* act (refusing to testify, or falsely testifying, at a trial) from evidence of an inducement to do something lawful (*i.e.*, not report defendant's crime)." 346 Or at 566 n 6 (emphasis in original).[3]

The state argues on appeal, as it did at trial, that *Bailey* and *Ortiz-Saldana* are distinguishable because, in

---

[2] Moreover, for all that appears from the record, the factual information that defendant agreed to ask Janssen to tell the authorities—that the son had reimbursed her—was not false.

[3] Without a legitimate factual basis in the record, the state's asserted inference appears to rest on character evidence—namely that defendant's son has a propensity to pressure Janssen to do whatever was necessary, whether lawful or unlawful, to avoid criminal liability and that defendant has a propensity to acquiesce in her son's demands. Ordinarily, however, the state may not rely on propensity evidence to prove that a defendant committed a past crime, much less a future one. *See State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021) (discussing propensity evidence).

this case, defendant entered into an agreement with her son after he had been indicted for forgery and identity theft. It follows, the state reasons, that a jury reasonably could find that defendant's agreement was made with an eye to the introduction of evidence at her son's trial. The difficulty with that distinction is that the terms of defendant's agreement were not directed at Janssen's testimony at trial; rather, they were specifically and solely focused on persuading Janssen to make an unsworn statement, outside the context of any official proceeding, to the detective or the deputy district attorney. The terms of defendant's agreement in this case no more permit the inference that the state urges here than the defendants' statements did in *Bailey* and *Ortiz*. *Cf. State v. Walker*, ___ Or App ___, ___, ___ P3d ___ (May 15, 2024) (slip op at 8) (a trier of fact reasonably could find that the defendant sought to unlawfully induce a witness to withhold sworn testimony in an official proceeding when there was evidence that the defendant believed that the complainant would be called to testify against him at his criminal trial and he told her, among other things, that "there better not be any testimony against me"). For that reason alone, the trial court should have granted defendant's motion for a judgment of acquittal on the conspiracy charge.[4]

Although no reasonable juror could infer that defendant conspired with her son to commit the crime of tampering, it does not necessarily follow that what defendant said to Janssen stayed on the right side of the line. We turn to that issue. In this case, the evidence relevant to prove tampering comes from a series of text messages that defendant and Janssen exchanged over a four-day period.

The first text message is from Janssen to defendant. That message begins with Janssen saying that the detective had told her that the district attorney would ask if she

---

[4] Defendant raises an additional argument. She contends that the only inference the jury could have drawn on this record was that she understood that her son would plead guilty if Janssen did not agree to speak to the authorities by a certain time. It follows, she contends, that she necessarily understood that no "official proceeding" would take place in which Janssen could offer or withhold sworn testimony. The jury could have drawn that inference, but we question whether this record required it to do so. In any event, we need not resolve that issue to decide this case.

wanted to press charges.[5] When defendant asked Janssen whether she had told the detective that the son had reimbursed her, Janssen said that she had. When asked whether she was going to press charges, Janssen replied that, if the district attorney asked her, she would say "no." Apparently, Janssen did not immediately tell either the detective or the deputy district attorney that she did not want to press charges, and defendant texted Janssen two days later, "Can you plea[s]e go to [the detective] and let him know you['re] not pressing charges and the DA's office. I doubt [the deputy district attorney] will come to you, you will have to go to her." The following day, defendant sent a final text message to Janssen saying that she had just arrived at the jail and wanted to know what she could tell her son.

A juror reasonably could infer from those text messages that defendant was trying to persuade Janssen to tell the detective and deputy district attorney that she did not want to press charges. However, for the reasons discussed above, no reasonable juror could infer from those text messages that defendant was asking Janssen either to give false sworn testimony in an official proceeding or to unlawfully withhold sworn testimony in an official proceeding. The trial court erred in denying defendant's motion for judgment of acquittal on the tampering charge as well as on the conspiracy charge.

Reversed.

---

[5] The exhibit admitting the text messages consists of a series of screen shots taken from defendant's cell phone. Some of the messages in the exhibit that the trial court admitted are "whited out" or redacted. Perhaps for that reason, the logical connection between the messages is not always apparent.