No. 181 March 11, 2026 645

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIEL LOWELL BRESHEARS,
*Defendant-Appellant.*

Union County Circuit Court
22CR52725; A181181

Thomas B. Powers, Judge.

Argued and submitted January 21, 2025.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General.

Before Ortega, Presiding Judge, Hellman, Judge, and Kistler, Senior Judge*

KISTLER, S. J.

Affirmed.

_____

* Kistler, S. J., *vice* Mooney, S. J.

**KISTLER, S. J.**

Defendant appeals a judgment of conviction for attempted first-degree sexual abuse, endangering the welfare of a minor, and public indecency. He does not dispute on appeal that a reasonable trier of fact could find that, when he exposed himself to a three-year-old child in a laundromat, he endangered the welfare of a minor and was guilty of public indecency. He argues, however, that that evidence is not legally sufficient to prove that he attempted to commit first-degree sexual abuse. We conclude that the evidence is not as limited as defendant perceives and that the trial court correctly denied defendant's motion for a judgment of acquittal. We accordingly affirm the judgment.[1]

Before setting out the relevant historical facts, it is perhaps helpful to identify their source. When defendant approached the child in the laundromat, three surveillance cameras recorded their encounter from different vantage points. Additionally, a police officer who obtained the surveillance footage testified how the footage from each security camera relates to the footage from the other cameras. The officer also described what the surveillance footage shows and, in doing so, commented on defendant's actions. The officer's commentary provides additional evidence from which the trier of fact could find that defendant attempted to commit first-degree sexual abuse.[2] Finally, the trial court admitted defendant's prior conviction for using a child in a display of sexually explicit conduct, which arose from defendant placing his penis on a sleeping child's face.[3]

---

[1] In his opening brief, defendant raises four assignments of error. His first assignment of error, which is noted above, is directed at the ruling denying his motion for a judgment of acquittal on the attempt charge. His remaining three assignments of error are directed at various aspects of the judgment. After defendant filed his opening brief, the trial court entered an amended judgment. The state argues in its answering brief, and defendant does not dispute, that the amended judgment moots the issues raised in his last three assignments of error. We agree. *See State v. Miller*, 345 Or App 617, 618 n 1, 583 P3d 545 (2025) (addressing a similar mootness issue).

[2] At one point during the officer's testimony, defense counsel objected to the officer's description of the security footage, and the state withdrew the question. The remainder of the officer's testimony was admitted without objection.

[3] Relying on *State v. Williams*, 357 Or 1, 346 P3d 455 (2015), the trial court ruled on a pretrial motion *in limine* that the judgment was admissible to prove defendant's purpose or intent in approaching the child. Although the judgment

With that preface, we set out the historical facts in light most favorable to the state and, in assessing defendant's arguments, draw all reasonable inferences in the state's favor. *See State v. Martin-Thanislaus*, 332 Or App 601, 602, 549 P3d 1288 (2024) (stating the standard of review for motions for judgment of acquittal). We begin by describing the laundromat where defendant encountered the child. Three parallel rows of washing machines, dryers, and other laundry equipment run the length of the laundromat. The row of washing machines is next to one of the side walls and is separated from it by an aisle with tables and chairs placed next to the wall. Near the end of that side wall is a small alcove that contains two vending machines placed side by side. The second vending machine is close to, if not touching, the back wall of the laundromat. A short built-in bench sits against the back wall. Over the bench is another vending machine for laundry supplies.

Just before defendant entered the laundromat, the three-year-old child was standing on the bench playing with the vending machine for laundry supplies. His mother walked by him and went to a row of dryers (the farthest row from where her child was standing) to remove some clothes. When the mother was removing clothes from the dryer, the child was not directly in her line of sight. The officer who viewed the surveillance footage testified that, when defendant entered the laundromat, "he immediately looks down toward, straight where [the child] is playing * * * he turns, grabs a magazine. * * * [Defendant] utilizes the magazine down at his waist level to hide the fact that he has his penis protruding from his pants." The officer added that "[t]here's one or two times where he kind of puts it back in his pants for a short period of time, but the majority of time he's in [the laundromat] he is masturbating."[4]

Manipulating his penis where the child could see it, defendant walked down the aisle running in front of the washing machines and approached the child. He initially

_____

does not identify the conduct that gave rise to it, defendant later acknowledged during cross-examination that he had been convicted for "creating child pornography" by placing his "penis on the face of a sleeping child."

[4] Although the officer described defendant as masturbating, a more accurate description might be shaking or wagging his flaccid penis.

stood a few feet away from the child shaking his exposed penis. He walked briefly away from the child, returned, and stepped into the next row (the middle row) of dryers and laundry equipment. He looked around and returned to the alcove where the child was standing. When he returned, defendant stood next to the vending machines. He turned his body to face the child and stood there, shaking his penis and glancing at the child.

After approximately 15 seconds, the child stepped to the edge of the bench, which brought him closer to defendant, and then jumped to the floor. When the child stepped to the edge of the bench, defendant shifted his position. He moved toward the center of the bench and closer to the child, all the while shaking his penis. The child then jumped off the bench, and defendant stood near to and over the child as he shook his penis. The officer testified that, "immediately when [the child] jumps off this platform you can see [defendant] approach him, take a step or two towards [the child] in more targeting [the child] and getting with his—his penis within a foot of [the child's] face."

It soon became apparent that the child had not jumped off the bench to get closer to defendant. Rather, he jumped off the bench to get closer to his mother. The child went past defendant and found his mother where she was putting away some clothes that she had taken out of the dryer. The child told her, "'Mom, that guy shook his wiener at me. He was gonna pee on me.'" After the child went over to his mother, defendant looked briefly at the contents of the vending machines as if he were going to buy something, zipped up his pants, and left the laundromat.

Based on that sequence of events, the state charged defendant with, among other things, attempted first-degree sexual abuse. *See* ORS 163.427(1)(a)(A) (prohibiting subjecting a person under 14 years of age to sexual contact). The indictment alleged that defendant had committed that offense by unlawfully and knowingly attempting to "caus[e the child] to touch the defendant's penis." Having charged an attempt, the state had to prove that defendant intended to cause the child to touch his penis and that he took a substantial step toward doing so. *See* ORS 161.405(1) (defining

the elements necessary to prove an attempt); *Dorn-Privett v. Brown*, 329 Or App 783, 786, 542 P3d 62 (2023), *rev den*, 372 Or 560 (2024) (applying those elements to attempted first-degree assault).

As we understand defendant's argument on appeal, he does not distinguish between the evidence necessary to prove intent and the evidence necessary to prove that he took a substantial step toward carrying out that intent. *Cf. State v. O'Hare*, 309 Or App 357, 365-66, 481 P3d 953 (2021) (reasoning that there was insufficient evidence to prove a substantial step). Rather, he argues that all a reasonable juror could infer from this record is that he engaged in public indecency and endangering the welfare of a minor. It follows, he contends, that no reasonable juror could find either that he intended to induce the child to touch his penis or that he took a substantial step toward achieving that goal.

In our view, the more difficult question for the state is whether a reasonable juror could find that defendant had the requisite intent, and we begin with that issue. In considering that issue, we note initially that this is not a case in which defendant stood at some distance from an undifferentiated group of people exposing himself to all of them. Rather, a reasonable trier of fact could find that, almost immediately after he entered the laundromat, defendant was singularly focused on the child and, at times during their encounter, came within a foot of him, all the while shaking his penis toward the child. A reasonable trier of fact also could find that, after he initially approached the child, defendant checked both the aisle behind him and the middle aisle to make sure that no one could see what happened next.

More importantly, when the child stepped to the edge of the bench, defendant began moving in front of and toward the child. A reasonable trier of fact could infer that defendant mistakenly understood that the child stepped to the edge of the bench because he was interested in getting closer to defendant's penis, and defendant moved closer to the child to facilitate that happening. Moreover, defendant stood near to and over the child shaking his penis after the child jumped down to the floor. To be sure, it turned out

that the child jumped off the bench to get away from defendant's penis, not to get closer to it. But a reasonable trier of fact could find that defendant's intent in stepping toward the child as the child started to get down from the bench was to give child the opportunity to touch his penis, which defendant had been holding out to him.

Although the analogy is not complete, defendant's actions were not that different from an angler who attempts to catch a fish with a baited hook. The fact that the child did not find defendant's lure attractive is what separates the completed crime from an attempt. But it does not preclude a reasonable trier of fact from finding that defendant intended to induce the child to touch defendant's penis.

We need not decide whether defendant's actions alone would be sufficient to permit a reasonable inference that defendant acted with the requisite intent. As the trial court explained in finding defendant guilty beyond a reasonable doubt, defendant's prior conviction also bears on his intent. The court observed that defendant's prior conviction, which arose out of his placing his penis on a sleeping child's face, revealed that he "is in that subset of people who find sexual gratification by having *** sexual contact with minors." The court explained that the act that gave rise to defendant's prior conviction was "so similar" to the attempted act alleged here that it gave rise to an inference that, in this case, defendant "was seeking the same similar sort of sexual gratification by his conduct."[5] Viewing defendant's actions in light of his prior conviction, we agree with the trial court that a reasonable trier of fact could find that he had the requisite intent.

Having concluded that a reasonable trier of fact could infer that defendant attempted to induce the child to touch defendant's penis, we turn to the question whether a reasonable trier of fact could also infer that defendant took a substantial step toward achieving that goal. The evidence on that question is fairly straightforward. Defendant

---

[5] In his opening brief, defendant argues that the prior conviction is distinguishable because it was "forcible." He never explains, however, how placing a penis on a sleeping child's face involved the use of force, nor does he identify any evidence in the record that would show that he had used force.

approached the child in an area removed from the other customers' sight and stood close to him. As before, when the child started to come closer to defendant by stepping off the bench, defendant stepped closer to the child and positioned himself in front of him, all the while shaking his penis at the child. If the child had been interested, he was close enough to reach up and touch it. There is ample evidence from which a trier of fact reasonably could find that defendant took a substantial step toward inducing the child to touch his penis. The trial court correctly denied defendant's motion for judgment of acquittal.

Affirmed.